# CHARLESTON.

## Smith v. Ward.

Submitted January 19, 1909. Decided November 9, 1909.

1. Vendor and Purchaser—*Vendor's Lien—Abatement.*

   Equity will not enforce a lien for purchase money reserved on land in a deed of general warranty when a part of the land had been before sold by the grantor to other persons whose right is superior to that of the grantee in the deed, without abatement from the purchase money of the value of the land so lost to the grantee in such deed. (p. 192).

2. Same—*Abatement from Purchase Money—Measure.*

   When abatement from purchase money is decreed a grantee of land under a general warranty deed for loss of part of the land within its bounds by superior adverse title, the measure of abatement or compensation is not the *average* value of the land lost as compared with the balance of the land, but the relative value, that is, the value of the particular land lost, at the date of the deed. (p. 193).

66 W. Va.

3. SAME—*Partial Failure of Title—Knowledge by Grantee of Superior Title.*

Knowledge by a grantee by general warranty deed of superior claim to part of the land conveyed to him, will not debar him from compensation for the particular land lost to him from such superior right. (p. 194).

4. SAME—*Abatement from Purchase Money—Limitation of Laches.*

The statute of limitation or laches will not prevent a purchaser of land under general warranty from abatement of purchase money yet unpaid for a part of the land lost to him from superior adverse right. (p. 197).

Appeal from Circuit Court, Barbour County.

Bill by Carrie Shuttlesworth Smith against Taylor Ward and others. From the decree, complainant and defendant Harmer appeal.

*Affirmed.*

*Haymond Maxwell* and *Samuel V. Woods,* for appellants.

*Fred O. Blue,* for appellee Taylor Ward.

BRANNON, JUDGE:

By deed Arthur W. Martin conveyed to Taylor Ward a tract of land in Barbour county containing 435 acres. The consideration was $20,000, part cash, the balance in deferred installments. Among these deferred installments was one of $1,000 payable 11th October, 1898, for which Ward made his note to Martin. Martin by his will left a legacy to Carrie Shuttlesworth, and in part payment of it Edwin Maxwell as executor of Martin assigned the note to Carrie Shuttlesworth. Later Carrie Shuttlesworth Smith, formerly Carrie Shuttlesworth, brought a chancery suit to enforce said note against the land under the lien reserved for deferred purchase money in said deed from Martin to Ward. Ward filed an answer setting up that the deed by which Martin had conveyed the land to him contained a covenant of general warranty, and that it conveyed the land by specific metes and bounds, and that within those bounds were contained certain lots, having houses upon some of them, which Martin had sold to persons before he conveyed the land to Ward, and that such persons were in possession actual of them when Martin conveyed to Ward, and that the value of those lots and

houses exceeded the amount of the note sued ·for by Mrs. Smith. The result of the suit was a decree dismissing the bill of Mrs. Smith, and discharging Ward from the $1,000 note.

It is not controverted that the owners of the lots lying within the boundary given in the deed from Martin to Ward have right paramount to Ward under said deed, or that Ward never got possession of them, or that their value exceeded the note, · or that they lie within said deed's boundary. Under the law the case is plainly for the defendant. Counsel for Mrs. Smith argue law of sale in gross and average value as if the case involved abatement of purchase money for deficiency in quantity. Those matters are not involved.· The case is one of loss of a part of the land within the boundary of the tract, lost to the purchaser by reason of superior rights arising from the ·vendor's prior sale, breaking the general warranty of· his deed guaranteeing good title. It is not the case where the purchaser gets all his boundary, but loses in quantity; but it is the case where he loses by superior adverse right a part of the lands assured to him. Are we at this day required to cite much authority for the worn proposition that one not getting a portion of the land warranted shall not be compelled to pay out purchase money yet in his hands? *Heavener* v. *Morgan*, 30 W. Va. 335; *McClaugherly* v. *Croft*, 43 *Id*. 270; *Clark* v. *Hardgrove*, 7 Grat. 399. *Butcher* v. *Peterson*, 26 W. Va., p. 452, states the law thus: "If the vendor has warranted the title, and the portion lost is much or little, the vendee may elect to hold so much of the land as he can and compel the vendor to abate the purchase money, if unpaid, or, if paid, to make compensation for the land so lost by reason of the want of title or right in his vendor. *Att'y. Gen.* v. *Day*, 1 Ves. 218; *Rofferty* v. *Shallcross*, 4 Madd. 227; *Beverly* v *Lawson*, 3 Munf. 317." And cases cited in *Worthington* v. *Staunton*, 16 W. Va., p. 242, show that it makes no difference whether the purchaser claims under an executory contract or a deed conveying legal· title. Equity will enjoin a judgment for purchase money against one claiming under a deed· of general warranty even where title is in suit· or in threat of suit. *Walmsley* v. *Stalnaker*, 24 W. Va. 214. Here the land has been lost.

On what basis shall Ward be compensated for lost land? Counsel for Mrs. Smith say on the basis of *average* value. That would be so, if it were a question of deficiency in quantity; but not so where there is loss of specific land. There the basis is the *relative* value. Hogg's Eq. Principles 23; *Butcher* v. *Peterson,* 26 W. Va. 447 *Clark* v. *Hardgrove,* 7 Grat. 399. That part lost may be specially valuable over the balance; it may contain a building, a fine spring, a stream, meadow or other thing giving it greater or special value. Rawle on Covenants for Title, sec. 187. So there can be no complaint of the decree on this score.

Another point made against the decree is, that when Ward purchased he knew of the ownership of the lots by recordation of deeds made by Martin to their purchasers, by their possession, and otherwise, and that in fact he gets all the land which he expected to get. Here we are cited to many authorities, *Cole* v. *Withers,* 33 Grat. 186, and others, holding that a purchaser must examine records, take notice of the rights of those in possession, and will be affected with notice of what inquiry would have disclosed. Why are we called on to investigate these authorities, when so plainly they do not apply? They apply between competing purchasers from the same vendor or to purchasers of land under incumbrances, or to one purchasing when a former purchaser from the same vendor is in possession. But what have they to do as to the rights of a purchaser against his vendor under a warranty? This is not a contest between Ward and those lot owners. The vendor has warranty against such other claims. The warranty has dispensed with inquiry. This Court said in *Butcher* v. *Peterson,* 26 W. Va. 450, "It is immaterial that the vendee had knowledge of all the facts in relation to the title, and that he accepted the conveyance or made the purchase, believing that said facts did not impair the title. When a purchaser has notice of a defect or incumbrance and requires from the vendor a warranty, the presumption of the law is that the covenant was expressly taken against such known defects or incumbrances. Rawle on Cov. Title 566; *Jackson* v. *Lizen,* 3 Leigh 161. If the purchaser had failed to contract for an express warranty, then this doctrine might apply; but to contend in the face of the positive covenant of Jackson that

Peterson should be denied because he had knowledge of facts which in law destroy the title to a part of the land purchased, would be to deprive him of the benefit of his warranty. The covenant of general warranty, unless qualified by the contract, in terms is a protection against defects of title whether they result from mistakes of law or mistakes of facts." See Rawle 123. As to this feature of the case we are cited to *Stafford* v. *White,* 6 Grat. 93, holding that where the parties did not know that land across a creek was in the bounds, and the purchaser got all the land which he expected to get or thought he was getting, though that part of the tract over the creek was held by superior right, there could be no abatement of purchase money. The court said that it fully appeared that the parties at the time of sale supposed that the land went only to the creek, and did not know that the lines called for included any land over the creek. It said that for the land sold, "supposed by the parties to be on the north-east side of the creek the appellee agreed to pay an aggregate sum". Here was a mutual mistake, and the evidence showed it. Abatement was properly given in that case. Ours is a different case. The evidence does not prove any understanding that the lots were not included, or that there was a mutual mistake.

I thought that the above quotation from Judge SNYDER was ample to establish the proposition that where a general warranty is made, knowledge of defect of title does not preclude the grantee from the benefit of the warranty; but some question about it having been suggested, I will cite further authority. "Covenants protect the grantee against every adverse right, intent or dominion whether he had notice of such adverse interest or not." *Huych* v. *Andrews,* (N. Y.) 10 Am. St. R. 432, citing on page 437 many cases stating that it makes no difference that the grantee had notice. 2 Greenleaf on Evidence, sec 242, says: "A public highway over the land, a claim of dower, a private right of way, a lien by judgment or mortgage, or any outstanding, elder or better title is an encumbrance, the existence of which is a breach of this covenant. In these and like cases it is the existence of the encumbrance which constitutes the right of action, irrespective of any knowledge on the part of the grantee." 11 Cyc. 1066, is

full authority for the proposition. So is Devlin on Deeds, sec. 897. So is *Jackson* v. *Ligon,* 3 Leigh 196, 201. Warranty binds even if the party knew of bad title. *Beech* v. *Miller,* 51 Ill. 207 (2 Am. Rep. 290). Rawle on Covenants for Title, 566, says that such is the rule; but he says that the purchaser cannot withhold the purchase money, but must pay and then turn round and sue on his covenant. Such is the English law, such perhaps in many of our states; but that is not law in the Virginias, because our cases say that the Virginia law differs materially in this respect. Our law is that the purchaser can enjoin a judgment for purchase money for bad title, or if sued in equity to enforce the lien, equity will relieve him from payment of the purchase money on account of defect of title. The cases expressly say that our law is different. *Walmsley* v. *Stalnaker,* 24 W. Va. 214; *Heavener* v. *Morgan,* 30 *Id.* 335; *McClaugherty* v. *Croft,* 43 *Id.* 272. In those cases are cited old Virginia cases for the same proposition.

.Ward set up in his answer the loss of the lots, and erroneously considered his answer as a reply setting up new matter calling for affirmative relief, whereas it was merely an answer in defense of the matter of the bill. The plaintiff demurred to it as a reply, but the court held it such, and then the plaintiff filed an answer to it as a reply, and alleged that Martin did not intend to sell the lots, and they were included in the deed by mistake on the part of the scrivener. This matter should have been put into the case by amended bill with a prayer for reformation of the deed, and as it relates to a matter of a mere defense answer, it is in law a special replication now obsolete. Cooper says it cannot have any effect on the defendant. 11 Va. & W. Va. Digest 262. Then, it would not put the matter in the case. But whether that answer could avail the plaintiff or not we need not say; for if we consider it as an amended bill alleging a mistake, there is no evidence of it. On the contrary, Charles F. Teter, the attorney who prepared the deed from Martin to Ward, says that Martin and Ward together came to his office, and he prepared the deed at Martin's request and Martin presented him the plat of the tract by which to draw the deed, the plat giving boundary, and told him to draw the deed by it. And after the deed had been drawn it was read to both Martin and Ward and

Ward was particularly anxious to know whether it carried all the buildings on the land, and he, Teter, told him it would, and that it was not necessary to set them out specifically. Teter says nothing was said about the lots in question. He does not say that they were to be excluded. He proves no mistake in drafting the deed by including them. No one else gives any evidence to prove such mistake. No evidence shows that Ward knew that the lots were included, in or out of the deed, or that he got all he expected to get without them. There is no evidence that Ward understood that an inch was to be excluded from the bounds of the tract as Martin had purchased and owned it; not a bit of evidence that Ward, or even that Martin, intended to except an inch from the tract as the plat bounded it. Both agreed on the plat as descriptive of the boundary. The evidence is full that they intended to conform to the plat. Martin might have forgotten to exclude the lot; but that would not bind Ward, it not being mentioned in the contract; but there is no evidence, except guess, that Martin intended to exclude any part of the tract as he had bought it. If there was a mistake, no evidence proves it. If Ward knew the lots were included, he might have thought that they were tenant houses.

It is clearly proven that Ward afterwards, when he discovered superior title in others to the lots, made demand on Martin for abatement on that account, and asked a settlement of the matter, and that Martin admitted liability for the lots, and promised Ward to arrange it. It is further proven that for two lots which had been sold by Martin before his sale to Ward, but not conveyed, Martin paid Ward one hundred and ten dollars, and then Ward conveyed those two lots to Martin's purchasers. It is not proven that Ward did, as a matter of fact, know that these lots had been conveyed by Martin. He lived miles away, and merely passed by the tract along the public road sometimes, and never inspected the tract or investigated the particular boundary.

It is argued that Ward's claim rests on the theory that Martin perpetrated a fraud, and that Ward should have called for rescission earlier, and not having done so, is to be treated as acquiescing and ratifying. This cannot be so. Ward's right arises, not from fraud, but from warranty broken.

It is argued that Ward's claim is barred by the statute of limitations. The statute was not pleaded. But Ward is not suing to collect anything. He is only asking to keep money in his hands. It may be that one who has paid suing at law for breach of warranty would be barred, but this is not that case. No time runs against right to retain purchase money and defend its collection in such a case. Nor will equity charge laches. Ward was not called on to sue at law or in equity as to this note. He could not sue on the warranty in advance of its payment. As well might it be claimed that one in possession of land might sue an adverse claimant on pain of losing his land by the statute of limitations.

It is assigned as error that the decree does not decree to Mrs. Smith the amount of the note against the estate of Martin by way of recourse on account of the fact that Martin's executor had assigned the note to Mrs. Smith. That was not involved in the case. We cannot in this case convene creditors of Martin. Ward is not interested in that matter. Relief on that matter is not foreclosed by the decree in this case.

An assignment of error is based on the fact that Ward's answer calls itself an answer calling for affirmative relief. It sets up the defense against the note for loss of land and asks that Ward be discharged from it. This did not require an answer calling for affirmative relief. As to this feature of the answer what matters the name? If called a cross bill answer, could not mere defense be made under it as under an ordinary answer? It is an ordinary answer as to the note. But the answer asked that the balance of the value of the lost land after crediting on the note be decreed to Ward against the estate of Martin. Likely as to this such statutory answer would be proper. I doubt it. But why are we put to the labor of responding to this assignment of error when Ward was denied, or not given, such relief against the estate? The decree is thus favorable to the estate as also to Mrs. Smith, a legatee. How are they harmed by that feature of the answer. No error is, of course, predicated on this feature of the answer.

Decree affirmed.

*Affirmed.*