# CHARLESTON.

SAMUEL DONATO *et al. v.* THOMAS G. KIMMINS *et als.*

(No. 5966)

Submitted September 20, 1927.  Decided September 27, 1927.

1. REFORMATION OF INSTRUMENTS—*Equity Will Not Reform Deed for Alleged Mutual Mistake, Except on Clear, Convincing, and Unequivocal Evidence.*

    A court of equity will not reform a deed because of alleged mutual mistake therein, unless it is shown by clear, convincing and unequivocal evidence that a mutual mistake was made.   (p. 204.)

    (Reformation of Instruments, 34 Cyc. pp. 915, 984.)

2. MINES AND MINERALS—*Abatement to Purchaser Under General Warranty May be Had of Purchase Money Unpaid for Part of Coal Under Land Lost Through Vendor's Want of Title.*

    An abatement to the purchaser under general warranty in a deed may be had of the purchase money yet unpaid for a

part of the land (the coal thereunder in this case) lost to him by reason of the want of title in his vendor.   (p. 205.)

(Mines and Minerals, 40 C. J. § 550; Vendor and Purchaser, 39 Cyc. p. 1581.)

3.   SAME—*Measure of Abatement of Price Under General Warranty for Loss of Coal Through Vendor's Want of Title to Land Conveyed is Value of Coal at Date of Deed.*

In such case the measure of abatement or compensation is not the average value of the land lost as compared with the balance of the land, but the relative value, that is, the value of the particular land lost, at the date of the deed. (p. 205.)

(Mines and Minerals, 40 C. J. § 550; Vendor and Purchaser, 39 Cyc. p. 1592.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Marshall County.

Suit by Samuel Donato and others against Thomas G. Kimmins and others for an injunction and for other relief. From a decree reforming a deed, a deed of trust and a note and dismissing plaintiffs' bill, plaintiffs appeal.

*Reversed and remanded.*

*Schmidt, Hugus & Laas,* for appellants.

*Charles E. Carrigan* and *Martin Brown,* for appellees.

WOODS, JUDGE:

This appeal is taken from a final order of the circuit court of Marshall county, decreeing that a certain deed to · the plaintiff, as well as the deed of trust and note given to secure part payment on same, be reformed, and dismissing plaintiff's bill.   The bill prayed for an injunction restraining the trustee from selling the real estate conveyed by the trust deed, and for the abatement of the purchase price in such a sum as would compensate plaintiff for a deficiency in the land received under his deed, the coal thereunder having been previously conveyed.

Both the plaintiffs and defendants lived on properties a few miles distant—one in Ohio county, the other in Marshall county.   Donato desiring to purchase a farm came in touch with Kimmins, who discussed the proposition of a sale of

part of his farm (100 acres). The parties proceeded on April 28, 1924, to the office of Grodhaus, cashier of a bank in Moundsville, and entered into a writing whereby Donato agreed to purchase 100 acres from Kimmins at a price of $12,000, and Donato agreed to give a good general warranty deed for his property on Stone Church Road, Ohio county, as part payment on same at a price of $5,500, and Kimmins agreed to accept said property as payment at said $5,500. Two days later the contracting parties, and their wives, appeared at the office of said Grodhaus and signed deeds which they had previously directed the cashier to prepare. At this time a note was executed, and a deed of trust given to secure the same, for the balance of the purchase price, on the part of Donato. The deed given by Donato to Kimmins made reference therein to the fact that the coal had been previously sold, while the deed given by Kimmins was a general warranty for the fee.

According to Donato's evidence, after he discovered that the coal under the property which he gained by the transaction had been previously sold, he insisted that he was entitled to an abatement to the value of the coal, and when the trustee under the deed of trust advertised the property for sale on his failure to meet payments on the note, this suit was instituted.

The first answer was filed, in which the defendants set up that they were not properly advised of the elements that a deed should contain, and that the making of the deed and the form of it was left entirely to the scrivner, and that the plaintiff Donato previously had been shown a plat of the land made at the time the coal was sold, and advised also by defendant Kimmins that it was so sold and conveyed.

The defendants later tendered an amended answer, setting up a claim to affirmative relief, and in addition to their former allegation, to the effect that Donato had been advised that the coal and mining rights underlying the property had been sold and conveyed, alleged that the scrivner had mistakenly omitted from the deed all reference thereto. The court was asked to reform the deed by an insertion of the exception of the coal and mining rights theretofore conveyed.

It is contended by the plaintiffs that the amended answer sought to change essentially the grounds of defense set up in the original answer, and that the court erred in not sustaining the motion to strike the same from the record.

As a general rule amendments to sworn answers will not be allowed where it is sought to change essentially the grounds of defense set up in the original answer. This is especially true where defendants have possession of all the facts at the time the original answer was sworn to and filed. *Loar* v. *Wilfong*, 63 W. Va. 306; *Matthews* v. *Dunbar*, 3 W. Va. 138. In the first answer it is averred that the vendors relied wholly on the scrivner to draft the deed, and in the amended answer they allege that the scrivner mistakenly omitted to make the exception. This, in our opinion, is not such a change as would bring it within the stated rule.

Was there a mutual mistake? The evidence shows that Kimmins and Donato, at the instance of Kimmins, first approached the scrivner and asked him to draft the deed. The memorandum heretofore spoken of was at that time written by the scrivner. This agreement is silent as to any reservations or exceptions. Two days later Donato and Kimmins appeared at the office of the scrivner and looked over the deed, made no objection to it, and were, in the language of Grodhaus, "very well satisfied". Grodhaus says that at no time was there any talk concerning any reservations in the deed, or any exception or reservation of the coal. Kimmins admits "there was nothing said about reserving". Grodhaus used the plat which Kimmins gave him in order to get the description, and Kimmins directed him concerning the writing of said description by means of the plat. Thus, so far, we see no actual testimony as to a mistake. But it is sought to be shown that Donato was told by Kimmins that the coal had been sold. This, if true, would be proper to be considered on the question of mistake. Its evidential value on this point would depend on whether the fact was proven to have been brought home to Donato. On this question of whether Donato had such knowledge conveyed to him prior to the execution of the deed, the evidence is conflicting. Donato and his wife emphatically deny such knowledge. A brother of Donato

says that he was present when the sale was made, and that Kimmins said, "he (Sam) got everything to the place". Kimmins stands alone in support of the statement that he told Donato that the coal had been sold. The only corroborating evidence is that of Henry Berger who testified that, in talking with Donato, "I says, 'You and your wife knowed the coal was sold before you bought it.' He says he don't go by what he knows, he goes by what the deed says." But· this conversation, set in a rambling dissertation about some transaction Berger had with Donato over a plow, occurred over a year after the deed was made. So we see that the independent fact of knowledge is not clearly shown. Divers witnesses were offered to prove the fact that the property was worth what Dontato paid for it, aside from the coal. This fact likewise might be considered on the question of mistake. However, it was controverted by witnesses for the plaintiff. But what is the effect when we throw into the scales, along with the evidence of the plaintiffs already adverted to, the deed? When a written contract upon its face is couched in such terms as to import a legal obligation, without any uncertainty as to the object or the extent of the engagements, it is conclusively presumed that the whole engagement of the parties and the extent of the undertaking were reduced to writing. *Jones* v. *Kessler*, 98 W. Va. 1; Greenleaf on Evidence, Sec. 275. May this solemn writing (the deed) be overthrown by this evidence? We here see the wisdom of the rule laid down by all the authorities that a court of equity will not reform a deed because of alleged mutual mistake therein, unless it is shown by clear, convincing and unequivocal evidence that a mutual mistake was made. *Blue* v. *Blue*, 92 W. Va. 574; *Stickley* v. *Thorn*, 87 W. Va. 673; *Ferrell* v. *Ferrell*, 53 W. Va. 515; *Melott* v. *West*, 76 W. Va. 739; *Smith* v. *Board of Education*, 76 W. Va. 239. A deed is an instrument executed with formality and imports full and complete exposure of the intent of the parties. It speaks the final agreement by the clearest and most satisfactory evidence. In some instances the courts have gone so far as to hold that it would be an extreme case where it would reform a written instrument upon the uncorroborated testi-

mony of a party thereto, even if such testimony is not contradicted. The books are full of cases which reveal the high degree of caution which courts exercise in such matters. The relief will be denied whenever the evidence is loose, equivocal, or contradictory, or is open to doubt or opposing presumptions. Story Eq. Jur., Vol. 1, Sec. 152; *Blue* v. *Blue, supra; Stickley* v. *Thorn, supra.* Tested by these principles of universal application, may we reform the deed in question. We think not. If any mistake is shown, it was the mistake of Kimmins alone. This is not sufficient, says the law, in the absence of Donato being guilty of inequitable conduct. Such conduct does not appear from the evidence. A like rule obtains even where such mistake was not one of fact but one of law. *Zollman* v. *Moore,* 21 Grat. 313; *Martin* v. *Lewis,* 30 Grat. 672. To hold otherwise would be to destroy the stability of written instruments of this character.

Having failed to bring home knowledge to Donato of the sale of the coal prior to his taking the deed for the property and no mistake common to both parties being made in the deed, we are brought to the consideration of the effect of the general warranty contained therein. It is very well established in this State that equity will grant relief to a vendee in possession of land under a conveyance containing such covenant, where the title thereof is questioned by suit prosecuted or threatened, or where the title is clearly shown to be defective. *Grossman* v. *Kenna,* 88 W. Va. 227. It is admitted that Donato's title is defective as to the coal under the land covered by his deed. Only part of the purchase money has been paid, and the remainder is sought to be collected by a sale of the property under a deed of trust given to secure the same. In the terse language of Judge BRANNON, in *Smith* v. *Ward,* 66 W. Va. 190: ''Are we at this day required to cite much authority for the worn proposition that one not getting a portion of the land warranted shall not be compelled to pay out purchase money yet in his hands?'' Continuing, he says: ''If the vendor has warranted the title and the portion lost is much or little, the vendee may elect to hold so much of the land as he can and compel the vendor to abate the purchase money, if unpaid,

or, if paid, to make compensation for the land so lost by reason of the loss of title or right in his vendor.'' In the present case there is a loss of specific land—the coal underlying it. The vendee is entitled to compensation for the specific land lost, and this is so even where he had knowledge of all the facts in relation to the title. *Smith* v. *Ward, supra; Butcher* v. *Peterson,* 26 W. Va. 450. The reason for the rule is that the warranty in such cases dispenses with inquiry. In such case the measure of abatement or compensation to the purchase is not the average value of the land lost as compared with the balance of the land, but the relative value, that is the value of the particular land lost (the coal thereunder, in this case), at the date of the deed. *Smith* v. *Ward, supra;* Hogg's Eq. Pr., 23; *Butcher* v. *Peterson, supra; Clark* v. *Hardgrove,* 7 Grat. 399.

We, therefore, reverse the decree of the circuit court and remand the case with directions to the chancellor to ascertain the value of the coal under the land covered by the plaintiff's deed, and abate the purchase money remaining unpaid, to the extent of the value of the said coal.

*Reversed and remanded.*