639 S.E.2d 711

John SMITH, and Katherine Sue
Smith, his wife, Plaintiffs
Below, Appellants,

v.

Irma SMITH Defendant Below, Appellee.

No. 33063.

Supreme Court of Appeals of
West Virginia.

Submitted: Sept. 20, 2006.

Decided: Dec. 1, 2006.

Jason R. Grubb, Beaver, for John Smith and Katherine Sue Smith.

Richard M. Gunnoe, Gunnoe Law Office, Hinton, for Irma Smith.

BENJAMIN, Justice.

The Appellants herein and plaintiffs below, John Smith and Katherine Sue Smith, his wife, appeal from an Order Pursuant to Bench Trial, dated October 6, 2005, by the Circuit Court of Summers County. In the matter before the circuit court, Appellants sought reformation of a deed, dated August 22, 2001, between themselves as grantors and the Appellee herein and defendant below, Irma Smith, as grantee based upon a claimed mutual mistake as to the boundaries of the property which they conveyed to the Appellee. The Appellants argued that there was a mutual mistake as to the property which was intended to be conveyed and the property which actually was conveyed by the deed. The Appellee denied that there was a mutual mistake and contended that the deed conveyed to her the property she understood she was acquiring from the Appellants. Accordingly, it was the Appellee's position that the deed should not be reformed.

In her counterclaim seeking a declaratory judgment, the Appellee asked the circuit court to declare that a reservation in the deed for the Appellants "to use the parking lot located [on the property conveyed by the deed]" is limited, as the Appellee claimed she was led to believe by the Appellants upon delivery of the deed, to a use of the parking lot by the Appellants as a means of ingress and egress to and from property owned and retained by them. The Appellants disa-

greed, claiming that the phrase "to use" reserved to them the right to use the conveyed parking lot for any purpose they should choose, including their right to continue parking thereon a bus which they owned, the holding of social events (especially an annual "apple butter festival") thereon, and the parking of their visitors' vehicles thereon.

Following a bench trial, the circuit court, in its order of October 6, 2005, determined that the granting clause in the August 22, 2001, deed is clear and unambiguous as the Appellants had conceded; that because the deed is clear and unambiguous as to what it granted, parol evidence that the parties thereto made a mutual mistake as to what the grantors (the Appellants) intended to convey and what the grantee (the Appellee) intended to acquire was inadmissible; and that the right "to use the parking lot" which the grantors reserved in the deed is limited to "ingress and egress and occasional parking." Appellants appealed.

We conclude that the circuit court erred in determining that parol evidence to establish and correct a mutual mistake in a clear and unambiguous deed was inadmissible; however, we also conclude that notwithstanding this error, Appellants fell far short in the bench trial of proving by strong, clear, unequivocal and convincing evidence, as required by this Court's prior decisions, that there was a mutual mistake in the deed's granting clause common to both the Appellants as grantors and the Appellee as grantee. We further conclude, based upon the circuit court's determinations, with which we do not disagree, that the phrase "to use" in the context of the reservation clause of the August 22, 2001, deed is ambiguous and accordingly should be restricted to the Appellants' uses of the parking lot at the time of closing. We further determine that a remand is neither required nor in the interest of judicial economy. See *Trimboli v. Board of Education*, 167 W.Va. 792, 795, 280 S.E.2d 686, 688 (1981). The record herein is complete and was fully developed below, and the issue relating to the use of the parking lot is distinct and limited. From this record, we conclude that in addition to Appellants' use of the parking lot as a means of ingress and egress to and from property owned and retained by them and for their occasional parking as found and ordered by the circuit court, the Appellants proved that they were using the parking lot prior to its conveyance to the Appellee for an annual "apple butter festival" and that, accordingly, they should be allowed that further limited use of the parking lot subject to the restrictions and limitations set forth below.

We therefore resolve the deed reformation issue in favor of the Appellee and interpret the Appellants' reserved use of the parking lot to also include the holding of an annual "apple butter festival" thereon as explained, described and limited below.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The property which the Appellants conveyed to the Appellee by the August 22, 2001, deed was known locally as the Sewell Valley Bank Building property. It was purchased in 1966 by John W. Smith, one of the Appellants, who had his mother, Chlora J. Smith, named as grantee in the 1966 deed. Chlora J. Smith died in 1973 and in her will she devised the Sewell Valley Bank Building property to her son, the Appellant John W. Smith. In 2000, Smith conveyed the property to himself and his wife, Appellant Katherine Sue Smith, with right of survivorship.

In 1978 or 1979, Appellants acquired additional property consisting of a house and one-eighth of an acre on which a house was located that became the residence of the Appellants. Unlike the Sewell Valley Bank Building, which had, and was conveyed by, a metes and bounds description, one-eighth of an acre was the only description provided for the later acquisition. The one-eighth acre adjoined the Sewell Valley Bank Building property and the two properties owned by the Appellants shared a common boundary at the rear of the Bank Building property. The house on the one-eighth acre acquired by the Appellants in 1978 or 1979 was described variously as approximately twenty or thirty feet from the rear of the Bank Building. After they acquired the one-eighth acre, the Appellants dug a well and a structure above it behind the Bank Building, which the Ap-

pellants at that time owned. The well, which provided water to both the Bank Building and the Appellants' residence, was situate within an approximate three-foot space between the back of the building and what was then a fence, which the Appellants apparently believed at the time of their signing of the deed marked the common boundary between their two properties. Thereafter, the fence was removed and the Appellants constructed one or more storage buildings, the front wall of which was the rear wall of the well structure.

After the Appellants and the Appellee, who was a distant cousin of Appellant John Smith, agreed upon a purchase price of $40,000 for the Bank Building property, the Appellants engaged Hinton attorney Perry Mann to prepare a deed conveying the property to the Appellee. The deed, as earlier noted, is dated August 22, 2001. The granting clause sets forth a metes and bounds description of the property conveyed and it recites that the property conveyed thereby contains one-eighth of an acre, more or less. The same metes and bounds description had been used in successive deeds to the Bank Building property dating back into the 1800's. The deed contains two reservations, one of which has already been noted, namely, the right of the Appellants to use the parking lot located on the conveyed property. The other reservation, which is not being challenged on appeal, reserves the right to the Appellants "to use the water from a well located on the herein described property [that is, the property conveyed] and the right to maintain said well in conjunction with [the Appellee]." The reservation recites the agreement of the Appellants and Appellee "to share the cost of operating and the cost of maintenance of said well."

Attorney Mann testified that he would have placed into the deed everything requested by his clients, the Appellants. While Mr. Mann could not recall whether he had read the deed to the Appellants and Appellee upon their gathering in his office for the closing, Appellant John Smith acknowledged that Mr. Mann had read the deed, including the metes and bounds description, to the Appellants and Appellee. Appellant Katherine Smith acknowledged that she read the deed before she signed it. Mr. Mann's assistant, Jennifer Gore, assisted Mr. Mann in the preparation of the deed and was present at the closing. Upon being called as a witness by the Appellants, Ms. Gore testified that the description of the property to be conveyed by the deed was provided by the Appellants. In response to a question from Appellants' counsel asking whether she remembered the parties disputing at the closing table what the Appellants were selling to the Appellee, she replied, "No. There was absolutely no question asked about the boundaries, at all. There was [sic] no questions, no confrontations, no problems, no issues, at all, about boundaries."

After the conveyance, the Appellee had the property acquired by her surveyed. The surveyor testified at the bench trial that there could be no doubt as to what was transferred by the August 22, 2001, deed.

Nearly three years after the deed of August 22, 2001, the Appellants commenced an action in the Circuit Court of Summers County which culminated in the Order Pursuant to Bench Trial, dated October 6, 2005, reference to which was made earlier. In their complaint, the Appellants alleged that the "deed of conveyance ... according to [the] survey takes in more real estate than [they] intended on selling to the Respondent [Appellee] and which the Respondent knew that she was not to receive by virtue of the said deed." They asked for "a re-formation of the description of real estate in the deed of conveyance to reflect the agreement of the parties as to what real estate was to be conveyed." They contended in their circuit court complaint, which they captioned a "Petition," that they, as grantors and Irma Smith, as grantee, "had an agreement as to what real estate was to be sold and conveyed unto [Irma Smith] which basically was the 'bank building' itself, a wooden shed on the back of the building and the right to use a concrete parking lot beside the 'bank building.' A concrete block building attached to the rear of the bank building was to be retained by [the grantors/Appellants] as their cellar-house. The boundary line between the respective parcels of real estate was agreed upon as a line which ran at the rear of the wooden structure in a northern direction to

the concrete block building. The parties [to the deed] further agreed to share a common water well located in the wooden structure attached to the rear of the 'bank building.'" Irma Smith in her answer to the complaint denied that there was any agreement between herself and the Appellants respecting the boundaries of the property to be conveyed other than as expressed in the deed itself.

In his testimony to the circuit court in lieu of a jury, Appellant John Smith was often unclear as to what he contended the agreement was as to the boundaries of the property to be conveyed and what he, himself believed were the deed boundaries of the Bank Building property. There was no testimony from Appellant John Smith that Appellee Irma Smith agreed that the boundary of the property to be conveyed was where the fence had been, which was not precisely located. In fact, Mr. Smith testified that "I didn't tell her where the property line was. I showed her where the fence line went up through there. I didn't say that was a property line. I said, but, Irma, we got to live here. I didn't know—at the time, I did not know where the property line was because, when I bought the property, I never had it surveyed...." In response to a further question of what he intended to sell Irma Smith, he replied, "The bank building and the parking lot." He also testified that he did not believe that the well was included in the deed's conveyance to Appellee, despite the fact that the deed reserves unto the Appellants "the right to use the water from a well located on the herein described [conveyed] property,"— a reservation which Mr. Smith instructed Attorney Mann to place in the deed to Irma Smith. Furthermore, Mr. Smith conceded that he had discussed with Attorney Mann the property that he was conveying to Irma Smith, and that he couldn't recall having said

anything to Attorney Mann about the old fence line that didn't exist at that time or of having told him that he was not conveying all of the Bank Building property but only part of it.[1] For her part, Irma Smith testified that there was never any indication by the Appellants that they wanted to retain any part of the Bank Building property.[2]

In their complaint, the Appellants also asserted that they had an agreement with the Appellee to use a concrete parking lot beside the bank building. Appellee countered that she believed that the reservation to use the parking lot was to create a right-of way for access to the Appellants' remaining property. In his testimony, Appellant John Smith stated that he told the Appellee during their negotiations for the sale and purchase of the Bank Building property that he couldn't sell it to her unless they shared the parking lot, that he and Appellee understood that he could continue to park there anywhere he wanted to, that she, too, would be allowed to use any of the parking lot, and that neither the Appellants nor the Appellee would have exclusive use of it. Appellant John Smith also testified that for eight or ten years he and his wife had held an annual apple butter festival on the parking lot on a weekend in October, which he described as an occasion for themselves and their friends to play music and make apple butter. When asked what the agreement was between himself and Irma Smith regarding the apple butter festival in the future, he replied that "[s]he wanted to come and join the apple butter [sic] when she bought it. In fact, there was one of my friends—we didn't have no electric hook up. After she had bought it, the year before she moved in, she let us use one of her electric hookups to hook a trailer up. She says, I want to be there next year."

1. Mr. Smith's confusion apparently has continued to this appeal. On appeal, Appellants now assert that there was a difference in what Mr. Smith believed at the time of deed execution and what he believed at trial. According to the Appellants, at the time of the execution of the August 22, 2001, deed, Mr. Smith felt the property line was the "old fence line," approximately three feet behind the Sewell Valley Bank building. By the time of trial, however, the Appellants contended that Mr. Smith felt that the prop-

er boundary was the wall of the Sewell Valley Bank building.

2. Despite Appellant John Smith's testimony that he didn't tell Irma Smith that the fence which had earlier been torn down was the boundary of the property to be conveyed, his wife testified that she told the Appellee that the boundary "went straight down through there because that's where the fence was."

Appellant John Smith also testified that he had parked a bus on the parking lot for about fourteen years. He was asked what his understanding was about continued parking of the bus on the parking lot following Irma Smith's purchase thereof. He replied that "[s]he knew that I was going to park the bus there. I told her that I had to keep the bus there." He said that he had instructed Attorney Mann to place the reservation in the deed reserving to the Appellants the right to use the parking lot.[3]

Appellee, Irma Smith, testified that it was absolutely understood between herself and the Appellants that she was acquiring the parking lot in that she needed the parking lot for the business she intended to conduct in the Bank Building. When asked what her understanding was as to the agreement with the Appellants regarding the use of the parking lot, she replied that she was aware and believed that the Appellants needed access over the parking lot to ingress and egress to their property and that to do them a favor in that regard she agreed to have the reservation placed in the deed. She also acknowledged that she had no objection to the Appellants' use of the parking lot for casual parking. As for the continued parking of Appellants' bus on the parking lot, she related that Appellant John Smith told her that the bus was for sale and accordingly did not expect the bus to be an issue for very long. Irma Smith testified that there were no discussions with the Appellants prior to her purchasing of the property concerning the Appellants continued use of the parking lot for an annual apple butter festival. She described those festivals in this manner: "He [Appellant John Smith] continues to have apple butter festivals the first weekend in October. During which time, numerous trucks, RV's, campers, and other vehicles come onto the property and park for three-day weekends. They build fires across my parking lot, three open fires, to stir the apple butter over. They erected a tent last year across the entire width of the parking lot. Musicians come in. They were playing music well into the night all weekend. They never asked permission." She also related

that on a continuing basis she only has sufficient space on the parking lot to park her car, which takes up about one-third of the parking lot, and the other two thirds is used by the Appellants to park their bus and for ingress and egress to and from the property owned and retained by them.

In its Order Pursuant To Bench Trial, dated October 6, 2005, the circuit court determined that the granting clause in the August 22, 2001, deed is clear and unambiguous as the Appellants had conceded; that because the deed is clear and unambiguous as to what it granted, parol evidence that the parties thereto made a mutual mistake as to what the grantors (the Appellants) intended to convey and what the grantee (the Appellee) intended to acquire was inadmissible; and that the right "to use the parking lot" which the grantors reserved in the deed is limited to "ingress and egress and occasional parking." Appellants appealed.

## II.

### STANDARD OF REVIEW

"In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. pt. 1, *Public Citizen, Inc. v. First Nat. Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996).

## III.

### DISCUSSION

Appellants assign two errors by the circuit court in its October 6, 2005, Order Pursuant To Bench Trial. Initially, Appellants assert that the circuit court incorrectly applied West Virginia law regarding mutual mistake in reformation of a deed. Secondly, they

---

3. Appellant John Smith's wife, however, contradicted her husband's testimony somewhat, testifying that she and her husband didn't sell the parking lot to Irma Smith and that the Appellants and the Appellee own the parking lot together.

contend that the circuit court incorrectly applied West Virginia property law by limiting the use of the parking lot as described in the reservation clause of the deed.

### A. Reformation of the Deed Based Upon Mistake

■ Appellants argue that the circuit court abused its discretion in the final order by not reaching the issue of mutual mistake. Appellants concede that there was no ambiguity in the deed; however, Appellants contend that there was an issue of mutual mistake, which would permit parol evidence to be considered. We agree that evidence of mutual mistake of the parties to a deed is not rendered inadmissible simply because the deed itself is clear and unambiguous.

■ "Parol evidence is admissible to establish a mutual mistake in a deed or other written instrument." Syl. Pt. 3, *Edmiston v. Wilson*, 146 W.Va. 511, 120 S.E.2d 491 (1961). Such evidence is admissible "to establish and correct a mutual mistake of fact in an unambiguous written instrument … not by virtue of an exception to the parol evidence rule but because that rule does not apply to or preclude the admission of such evidence [sic] for that purpose." *Id.* at Syl. Pt. 4.

■ In *Donato v. Kimmins*, 104 W.Va. 200, 139 S.E. 714 (1927), this Court found a general warranty deed was clear and unambiguous in not excepting coal and mining rights from the property which was conveyed by the deed. Nevertheless, this Court, in an action seeking to reform the deed by the insertion of such an exception allowed the admission of evidence that the parties to the deed understood that there had been a prior conveyance of these rights and that they were mutually mistaken in not placing an exception in the deed. Therefore, if an unambiguous deed fails to express the obvious intention of the parties, a court may seek to arrive at the intention of the parties by resort to parol evidence. *See, Farabaugh v. Rhode*, 305 Mich. 234, 240, 9 N.W.2d 562, 565 (1943).

The significant issue before this Court in *Donato* was whether the deed, which it described as a "solemn writing," should be overthrown by the evidence admitted of a mutual mistake. 104 W.Va. at 204, 139 S.E.

at 715. To that question, this Court responded:

> We here see the wisdom of the rule laid down by all the authorities that a court of equity will not reform a deed because of alleged mutual mistake therein, unless it is shown by clear, convincing, and unequivocal evidence that a mutual mistake was made. A deed is an instrument executed with formality, and imports full and complete exposure of the intent of the parties. It speaks the final agreement by the clearest and most satisfactory evidence. In some instances the courts have gone so far as to hold that it would be an extreme case where it would reform a written instrument upon the uncorroborated testimony of a party thereto, even if such testimony is not contradicted. The books are full of cases which reveal the high degree of caution which courts exercise is such matters. The relief will be denied, whenever the evidence is loose, equivocal, or contradictory, or is open to doubt or opposing presumptions."

*Id.* at 204–5, 139 S.E. at 715–16 (internal citations omitted). In *Donato*, we refused to reform the deed, because if any mistake was shown, "it was the mistake of [the grantor] alone." *Id.* at 205, 139 S.E. at 716. This, we said, "is not sufficient, says the law, in the absence of [the grantee] being guilty of inequitable conduct." *Id.* Such conduct was not shown by the evidence in *Donato*, and the Appellants in the case now before the Court have not alleged any such conduct on the part of the Appellee.

■ To reform a deed because of mistake, the mistake cannot be a mistake of only one of the parties thereto as we acknowledge in *Donato*. Rather, the mistake must be mutual, one common to both parties to the instrument, as we said in *Koen v. Kerns*, 47 W.Va. 575, 580, 35 S.E. 902, 904 (1900), and which we much later quoted approvingly in *Edmiston*, 146 W.Va. at 524, 120 S.E.2d. at 499. A mutual mistake is therefore one which is common to all parties to an instrument, wherein each labors under the same misconception respecting a material fact or provision within the agreement.

■ The measure of proof of a mutual mistake which a party to a deed must provide in order to have a deed reformed because of the mistake is high. The proof must be " 'strong, clear and convincing,' " as we stated in *Edmiston*, at Syl. Pt. 5, citing Syl. Pt. 4, *Johnston v. Terry*, 128 W.Va. 94, 36 S.E.2d 489. In *Edmiston*, we observed:

> In other decisions with respect to the evidence required to establish mutual mistake in an unambiguous written instrument this Court has expressed substantially the same requirement in different phraseology, such as, for example, the evidence must be "clear, positive and direct," [citation omitted]; "clear, convincing, and free from doubt, and not conflicting," [citation omitted]; "clear, convincing and free from reasonable doubt," [citation omitted]; "clear and convincing proof beyond reasonable controversy," [citations omitted]; "unequivocal evidence and irresistibly conclusive," [citations omitted]; and "clear and strong, so as to establish the mistake to the entire satisfaction of the court," [citation omitted].

146 W.Va. at 527, 120 S.E.2d at 500 (internal citations omitted). In *Edmiston*, we further observed that such a high measure of proof was necessary to establish a mutual mistake of the parties to an unambiguous deed because of "the presumption that when a written instrument is plain and unambiguous and is complete upon its face it contains the entire agreement between and is the final act of the parties; and because the writing itself is regarded as evidence which can be overcome only by strong, clear, unequivocal and convincing evidence to the contrary." *Id.* (Internal citations omitted).

■ We hold that to justify the reformation of a clear and unambiguous deed for mistake, the mistake must be one of fact, not of law; the mistake must be mutual and common to both parties to the deed; the unambiguous deed must fail to express the obvious intention of the parties; and the mutual mistake must be proved by strong, clear and convincing evidence. Here, the Appellants have conceded that the granting clause in their August 22, 2001, deed is clear and unambiguous, as the circuit court so-determined in its Order Pursuant to Bench Trial, entered October 6, 2005. Our review of the evidence presented to the circuit court sitting without a jury leads us to conclude that the Appellants fell far short of meeting their burden of showing by strong, clear, unequivocal and convincing evidence that a mistake was made as to the boundaries of the property conveyed by the August 22, 2001, deed. If there was a mistake, it was the mistake of the Appellants, the grantors, alone, and that is not sufficient, as this Court in *Donato* noted, for this Court to reform the August 22, 2001, deed between the Appellants and the Appellee. Indeed, it appears that the Appellants, in the absence of a survey thereof before they acquired the property and while they owned it, assumed the metes and bounds description of the property conveyed by that deed comprised less property than that actually provided by that description—a description which had been used in successive deeds to the property for over a hundred years. Accordingly, for reasons different than the bases given by the circuit court for its decision, we affirm the circuit court's October 6, 2005, Order Pursuant To Bench Trial on the issue of the reformation of the August 22, 2001, deed.

### B. The Reservation Clause in the Deed.

■ While the Appellants reserved unto themselves two rights from what would otherwise have been granted in the granting clause of their August 22, 2001, deed to the Appellee, only one of the reservations is in issue in this appeal, namely, "the right [of the Appellants] to use the parking lot located on the [property conveyed by the deed]." In its October 6, 2005, Order Pursuant To Bench Trial, the circuit court apparently believed that the phrase "to use" is ambiguous. The circuit court ruled that Appellants' use of the parking lot should be limited to ingress and egress and occasional parking. The circuit court further ruled that the Appellants' use of the parking lot could not unreasonably interfere with the Appellee's use of the parking lot, and that such use was subject to the Appellee's reasonable request as to the manner in which the reserved right to use the parking lot was exercised.

The circuit court in its order also rejected (1) Appellants' continued use of the parking

lot for their annual apple butter festival on the grounds that such use "is not related to ingress, egress, or simple parking and the term 'use' is not certain and definitely reserved for the purpose of a festival"; and (2) Appellants' continued use of the parking lot for the parking of their bus thereon on the following two grounds: "[t]estimony indicated that discussions concerning the bus took place prior to the deed execution in which the Plaintiffs represented to the Defendant that the bus would be removed from the parking lot," and "the bus' presence is not germane to 'use' in the deed's reservation."

Appellants assert that the circuit court incorrectly applied the legal principles of West Virginia property law by limiting the use of the parking lot. Appellants contend that the phrase "to use" in the reservation clause of the August 22, 2001, deed means any use, including parking, ingress and egress, activities, the parking of the bus, social events and visitor parking.

Initially, we observe that if the reservation clause is interpreted as allowing the Appellants to use the parking lot which they conveyed to the Appellee for any purpose they may choose, as they contend, they then may preclude the Appellee from making any use of the parking lot which she owns. The effect would be that with respect to the parking lot all the Appellee has by virtue of the deed is the bare title thereto, with an associated obligation to pay the property taxes thereon, and an associated risk of liability for death or injury arising out of ownership.

▬ Considering such possible effect and the unlikely event that any grantee would agree to such breadth of its meaning, we are inclined to agree with the circuit court that the "to use" phrase in the context of the reservation clause in the deed and the opposing contentions of the Appellants and the Appellee as to what it meant to them at the time of the closing is ambiguous in that it is "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syl. pt. 4, *Estate of Tawney v. Columbia Natural Resources, L.L.C.*, 219 W.Va. 266, 633 S.E.2d 22 (2006). Being so, the deed reservation is to be strictly construed against the grantors and in favor of the grantee and is to be clarified by resort to the intention of the parties ascertained from the deed itself, the circumstances surrounding its execution, as well as the subject matter and the parties' situation at the time of the execution of the deed. It is incumbent upon the Court to place itself in the situation of the parties, as near as may be, to determine the meaning and intent of the language employed in the deed. *See Meadows v. Belknap*, 199 W.Va. 243, 246–47, 483 S.E.2d 826, 829–30 (1997).

Accordingly, since the Appellants were prior to the delivery of the deed using the parking lot for an "apple butter festival" one time annually, on a three-day weekend in October (a "use" of particular interest to the Appellants) and the Appellee knew that and did not undertake to bar such use in the reservation clause of the deed, we interpret the clause as also allowing that limited use in addition to the ingress/egress use and occasional parking by the Appellants as determined by the circuit court, provided that the use by the Appellants of the parking lot for an annual three-day weekend "apple butter festival" shall end when the Appellants no longer own the property on which their present residence is located or upon the death of either of the Appellants. For the reasons stated by the circuit court, we do not interpret the reservation clause as including the continued parking of the Appellants' bus thereon.

## IV.

## CONCLUSION

For the reasons stated in the foregoing discussion, we affirm the circuit court's October 6, 2005, Order Pursuant to Bench Trial on the issue of the reformation of the August 22, 2001, deed. We further affirm that portion of the said October 6, 2005, order on the issue of the reservation clause within the deed insofar as such order relates to the ingress/egress use by the Appellants of the parking lot and the Appellants' occasional parking thereon and bars the continued parking by the Appellants of their bus thereon. We reverse that portion of the said October 6, 2005, order which rejected Appellants' continued use of the parking lot for an

annual three-day weekend "apple butter festival" as set forth herein.

Affirmed in Part and Reversed in Part.