# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Curtis E. Pitcock, Karen Pitcock, Lilia Pitcock,
and Edna Catherine Pitcock, Defendants Below,
Petitioners

vs)  No. 12-1504 (Hancock County 02-C-248)

Thomas J. Parks, Loretta Parks, Timothy Buchanan,
and Tammie R. Buchanan, Plaintiffs Below,
Respondents

**FILED**

November 22, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Curtis E. Pitcock, Karen Pitcock, Lilia Pitcock, and Edna Catherine Pitcock, by counsel Stephen M. Recht, appeal an order of the Circuit Court of Hancock County entered on November 14, 2012, that found petitioners were bound by the terms of their settlement agreement with respondents regarding petitioners' use of a right of way on respondents' property. Respondents Thomas J. Parks, Loretta Parks, Timothy Buchanan and Tammie R. Buchanan, by counsel Lawrence L. Manypenny, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners access their property via a right of way over respondents' property. The right of way consists of a roadway, a bridge, and a second, curved section of roadway that leads to petitioner's driveway. Over the years, the parties have entered into various agreements regarding petitioners' use of the right of way. The agreement at issue in this appeal, a "Deed of Right of Way and Maintenance Agreement," was entered into by the parties or their predecessors in interest on October 25, 1984.

Some fifteen years after the parties entered into this agreement, a dispute arose regarding the right of way. Petitioners claimed they had maintained the bridge, but that respondents had failed to contribute to the cost of the maintenance. Respondents claimed that Petitioner Curtis Pitcock's use of commercial vehicles on the right of way encroached on its presumed eight-foot width and damaged the surface of the bridge.

1

On October 29, 2002, respondents filed a complaint and a request for injunctive and declaratory relief against petitioners seeking, among other things, to limit the width of the right of way. Petitioners filed a counterclaim seeking, among other things, reimbursement for the cost of maintaining the bridge.

The parties met with the circuit judge at the courthouse to discuss a possible settlement agreement on November 4, 2003. That same day, the parties and the circuit judge traveled to respondents' property where they watched Mr. Pitcock's commercial vehicles traverse the right of way. Paint was used to mark the course of the vehicles. The paint marks were then measured and the width of the course was determined to be twelve feet. The parties thereafter returned to the courthouse and spread their settlement agreement on the record, as follows:

1. Based on the measurements during the site visit, the right of way will be twelve feet wide.

2. Respondents' surveyor will attempt to plot the location of the twelve-foot-wide right of way to the satisfaction of both parties while minimizing the disturbance to the parties' properties.

3. The surveyor may measure Mr. Pitcock's trucks and watch them traverse the right of way.

4. If the parties cannot agree on the location of the twelve-foot right of way, the court will determine its location.

5. Mr. Pitcock will be able to use the right of way for limited commercial purposes. The trucks traversing the right of way during the November 3, 2004, visit are to be the same or similar to those used during respondents' surveyor's site visit.

The circuit court then said that if respondents' surveyor was unable to plot the location of the twelve-foot-wide right of way, it would (1) appoint an independent surveyor, and (2) adopt the location chosen by that surveyor. The court concluded that "as far as commercial use and the size of the right of way, which were the big issues . . . [they] have been resolved."

Respondents' surveyor went to respondents' property and watched Mr. Pitcock's commercial vehicles traverse the right of way. Respondents' surveyor concluded that it was impossible to plot a uniform twelve-foot-wide right of way because some sections would need to be fifteen feet wide to accommodate Mr. Pitcock's commercial vehicles.

In 2004, the circuit court granted petitioners' motion for an injunction precluding respondents from placing poles along the right of way that would, in essence, locate the right of way.

In 2005, the circuit court issued an order appointing an independent surveyor to plot the location of the right of way. The independent surveyor plotted the location of the right of way.

However, he made the curve in the road 17.9 feet wide to accommodate Mr. Pitcock's commercial vehicles.

By order entered November 14, 2012, ten years after respondents filed their complaint, the circuit court ruled as follows:

(1) On November 4, 2003, no party placed any reservation, qualification, or contingency on the record regarding the parties' definitive agreement to a twelve-foot-wide right of way.

(2) The twelve-foot measure was agreed upon following Mr. Pitcock's demonstrated ability to enter and exit his property using his commercial vehicles.

(3) It was not clear why Mr. Pitcock could access his property with his commercial vehicles on November 3, 2004, using a twelve-foot-wide right of way, but could not do so thereafter.

(4) Petitioners failed to present clear and convincing evidence of a mutual mistake of a material fact between the parties.

Petitioners now appeal the circuit court's order. We have said,

when this Court undertakes the appellate review of a circuit court's order enforcing a settlement agreement, an abuse of discretion standard of review is employed. *See* Syl. pt. 7, in part, *Smith v. Monongahela Power Co.*, 189 W.Va. 237, 429 S.E.2d 643 (1993) ("The determination of whether a settlement has been made in good faith rests in the sound discretion of the trial court. . . ."). The reason for this deferential standard is that "'[b]oth law and equity favor repose of litigious matters. Compromise by parties of their differences is favored by all courts. When a matter has thus been put at rest, it should not be disturbed except for grave cause.'" *Sanders v. Roselawn Mem'l Gardens*, 152 W.Va. 91, 104, 159 S.E.2d 784, 792–93 (1968) (quoting *Janney v. Virginian Ry. Co.*, 119 W.Va. 249, 252, 193 S.E. 187, 188 (1937)).

*DeVane v. Kennedy*, 205 W.Va. 519, 527, 519 S.E.2d 622, 630 (1999).

"Under the abuse of discretion standard, we will not disturb a circuit court's decision unless the circuit court makes a clear error of judgment or exceeds the bound of permissible choices in the circumstances." *Graham v. Wallace*, 214 W.Va. 178, 182, 588 S.E.2d 167, 171 (2003) (quoting *Hensley v. WV DHHR*, 203 W.Va. 456, 461, 508 S.E.2d 616, 621 (1998)).

*Wells v. Key Communications*, L.L.C., 226 W.Va. 547, 551, 703 S.E.2d 518, 522 (2010).

3

On appeal, petitioners raise three assignments of error.[1] Petitioners first argue that the circuit court erred in failing to find that the parties suffered under a mutual mistake of material fact when they entered into a settlement agreement regarding the appropriate width of petitioners' right of way.

"A mutual mistake is one which is common to all parties, wherein each labors under the same misconception respecting a material fact or provision within the agreement." Syl. Pt. 4, *Smith v. Smith*, 219 W.Va. 619, 639 S.E.2d 711 (2006). "'A party to such settlement seeking to re-open [the settlement] on any of said grounds must distinctly allege and by clear and convincing evidence prove the particular facts, wherein such accident, mistake or fraud consists . . . .' Syllabus point 3, in part, *Calwell v. Caperton's Adm'rs*, 27 W.Va. 397 (1886)." Syl. Pt. 8, *DeVane v. Kennedy*, 205 W.Va. 519, 519 S.E.2d 622 (1999).

Petitioners show no clear and convincing evidence of a mutual mistake. When the parties spread their settlement agreement on the record, petitioners' did not object to the manner in which the measurements were made, or to the circuit court's conclusion that "as far as commercial use and the size of the right of way, which were the big issues . . . [they] have been resolved." Further, petitioners do not dispute that at the demonstration on November 4, 2003, Mr. Pitcock's commercial vehicles were, in fact, able to traverse the right of way within the twelve-foot limit. Finally, petitioners spread the settlement agreement on record without any reservation, qualification, or contingency as to the width of the right of way. As such, and in light of the abuse of discretion standard, we will not disturb the circuit court's decision where petitioners have failed to prove that the circuit court made a clear error of judgment or exceeded the bound of permissible choices in the circumstances.

Petitioners next argue that the circuit court erred in ruling that the parties' settlement agreement was not contingent upon Mr. Pitcock's ability to utilize the right of way for his commercial vehicles. Petitioners admit that the settlement agreement does not contain the term "contingency," but argue that the parties' actions during the pendency of this case clearly show that enabling Mr. Pitcock's commercial vehicles to use the right of way was a key component of the agreement. In support of their argument, petitioners cite to the 2005 order regarding the appointment of the independent surveyor in which the court said that if the surveyor could not locate a twelve-foot right of way, it "would then address the legal issue of whether or not the width of the right of way could be expanded so as to allow the ingress and egress anticipated in the parties' agreement. . . ."

Respondents' reliance on the circuit court's statement is misplaced, in part, because they omit that the circuit court specifically ordered the independent surveyor "to configure a *twelve-foot right of way*[.]" Further, in the order on appeal, the circuit court did, in fact, address "the legal issue of whether the width of the right of way could be expanded," albeit in a manner unfavorable to petitioners. Finally, and most importantly, the circuit court's order does not preclude petitioners from using the right of way for commercial vehicles. Instead, the order merely precludes petitioners from using commercial vehicles on the right of way that require

---

[1]Petitioners raise a fourth assignment of error that addresses matters outside the order on appeal. As such, we do address that fourth assignment of error herein.

4

more than a twelve-foot width. As such, the circuit court did not abuse its discretion because petitioners do, in fact, have "limited commercial use" of the right of way.

Petitioners' third assignment of error is that the circuit court erred in failing to reform the settlement agreement between the parties. Specifically, petitioners complain that the circuit court failed to comply with its ruling that, if it had to appoint an independent surveyor, it would adopt the "location" of the right of way determined by that surveyor (who included a 17.9-foot-wide section in the right of way). Petitioners contend that the circuit court should have taken judicial notice of the independent surveyor's findings, adopted his location of the right of way, and then used its equitable powers to reform the parties' settlement agreement on mutual mistake grounds.

Petitioners' argument is based on the premise that the *location* of the right of way and the *width* of the right of way are one in the same thing. They are not. The width of the right of way was resolved in the parties' 2004 settlement agreement. Thereafter, the surveyors' only duty was to "locate" a twelve-foot-wide right of way on respondents' property. In regard to a circuit court's ability to reform written instruments such as the parties' settlement agreement, we have said,

> "[t]he jurisdiction of equity to reform written instruments, where there is a mutual mistake . . . if the evidence be sufficiently cogent to thoroughly satisfy the mind of the court, is fully established and undoubted." Syllabus Point 2, *Nutter v. Brown*, 51 W.Va. 598, 42 S.E. 661 (1902).

Syl. Pt. 2, *First Am. Title Ins. Co. v. Firriolo*, 225 W.Va. 688, 695 S.E.2d 918 (2010). Here, the parties' settlement agreement did not result from mutual mistake and, therefore, the circuit court did not have jurisdiction to reform the agreement.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  November 22, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II