THEODORE EILAND, *et al.*

*v.*

RAY D. POWELL, *et al.*
RAY D. POWELL, *Appellant*

(No. 10303)

THEODORE EILAND, *et al.*

*v.*

RAY D. POWELL, *et al.*,
LEON S. WILES, WELLS S. GAYNOR
*and* SAM S. POLITANO, *Appellants*

(No. 10304)

CHARLES B. BEATTY, *et al.*

*v.*

RAY D. POWELL, *et al.*,
RAY D. POWELL, *Appellant*

(No. 10305)

CHARLES B. BEATTY, *et al.*

*v.*

RAY D. POWELL, *et al.,* LEON
S. WILES, WELLS S. GAYNOR *and*
SAM S. POLITANO, *Appellants*

(No. 10306)

Submitted April 17, 1951.          Decided June 5, 1951.

*P. W. McCreight, Okey P. Keadle, Scherr Meek & Vinson,* for appellants.

*E. Henry Broh,* for appellees.

RILEY, JUDGE:

Theodore A. Eiland and wife and Charles B. Beatty and wife brought separate suits against common defendants, namely, Ray D. Powell, Virginia O. Powell, Claude L. Walker, Margaret E. Walker, Leon S. Wiles, Frances B. Wiles, Wells S. Gaynor, Letha Wells Gaynor, Sam S. Politano and Marian Politano, to have their separate deeds to lots Nos. 34 and 33, respectively, in Walker Court of Park-

side Terrace Subdivision to the City of Huntington, reformed on the basis of mutual mistake so that the grantors shall be required to execute and deliver to the Eilands a deed of general warranty for said lots No. 34 and 665 square feet of the easterly part of lot No. 35, and to the Beattys a like deed for lot No. 33 and 640 square feet of the westerly part of lot No. 32, respectively, or, in the alternative, in the event the defendants in said causes cannot convey good and merchantable title to the property described, as so reformed, that the plaintiffs recover from the defendants, Powell, Wiles, Gaynor and Politano, jointly and severally, damages in such sum as will compensate them for the loss suffered as the result of the alleged fraud and misrepresentation by defendants and the breach of the warranty in the deeds, as reformed.

The circuit court, after hearing the case, decreed that both suits be dismissed as to Virginia O. Powell, Margaret H. Walker and Claude L. Walker, and overruled the motion to dismiss the suits as to the other defendants, holding that the Eilands and the Beattys were entitled to the relief prayed for in their respective bills of complaint in so far as such relief relates to the reformation of said deeds, dated July 1, 1948 (Eilands), and August 16, 1948 (Beattys), respectively, from Powell, Wiles and Gaynor and Politano, together with the wives of the three last-mentioned defendants, and that in event good and merchantable title could not be delivered that plaintiffs recover from Powell, Wiles, Gaynor and Politano, jointly and severally, one thousand dollars with interest. From such action Ray D. Powell prosecutes appeal and supersedeas in the Eiland and Beatty cases, being Nos. 10303 and 10305; and Wiles, Gaynor and Politano, jointly, prosecute appeal and supersedeas in the same cases, being Nos. 10304 and 10306.

The lots involved are situate in Walker Court. This court, a part of Parkside Terrace Subdivision to the City of Huntington, is rectangular in shape, having its entrance at the northern end thereof. Its ten lots, numbered 29 to 38, inclusive, beginning at the northeast corner, are laid

off in a "U", lots Nos. 32, 33, 34, and 35, involved in this litigation, forming a rectangular strip lying south of and contiguous to the southern half of a cement turnaround, together with extensions of the east-west diameter (38.2') of said turnaround to the respective east and west outside boundaries of the Court. Each of the four last-mentioned lots fronts on a thirty-foot segment of the cement turnaround. The division lines between these four lots fan out from division points on the circumference on the degree of the radius of the turnaround and the back boundary of the Court.

Dwellings were completed on lots Nos. 33 and 34. About the time of the sale of these improved lots, certain slag driveways were constructed at the instance of Powell along the westerly line of lot No. 34 and along the easterly line of lot No. 33. After occupation of these lots by plaintiffs, and during negotiations for the sale of lots Nos. 32 and 35, it became apparent that the slag driveways were substantially on lots Nos. 32 and 35. Virginia O. Powell and Margaret H. Walker, the owners of Parkside Terrace, made several futile efforts to adjust the matters in controversy, suggesting among others that said slag driveways be constructed so as to be partly on lots Nos. 32 and 35 and partly on lots Nos. 33 and 34. All suggestions were rejected, and plaintiffs at the time of the institution of their suits filed *lis pendens* claiming rights in lots Nos. 32 and 35.

Lots Nos. 32, 33, 34 and 35, as shown by the recorded plat, as well as by the pleadings and evidence in this case, extend across the full width of the southern part of the Court, each having a curving frontage of thirty feet on the southern half of the cement turnaround, and running back to widths in the rear.

The defendants, Ray D. Powell and Claude L. Walker, evidently as partners, or at least engaged in a joint enterprise, were employed as real estate agents and brokers, and they sold lots in Parkside Terrace as agents for their respective wives, who owned the lots. The defendant,

Leon S. Wiles, together with Gaynor and Politano, were associated in the building and construction business in Huntington.

On November 14, 1947, Wiles purchased lots Nos. 33 and 34 from defendants, Virginia O. Powell and Margaret H. Walker, the deed therefor being made to Wiles and his associates, Gaynor and Politano. The concrete driveway and turnaround already had been constructed for the use of the several lots in the Court. However, no grading had been done on lots Nos. 34 and 33, the surface of which was below the level of the above-mentioned improvement. Following the purchase by Wiles and his associates the engineers who laid out the subdivision staked house locations on lots Nos. 33 and 34. If the outside corners of these lots had ever been staked off, the testimony is to the effect that, at the time of the negotiations leading up to the purchases by the Eilands and Beattys, there were no stakes on said lots, except the one on the dividing line between the two lots. Wiles and his associates built a house on each of said lots. The line between the two lots (Nos. 33 and 34) was equally distant between the two houses. In accordance with an agreement, Powell and Walker undertook the sale of the houses, and Powell and Wiles actively conducted negotiations with the plaintiffs as to their respective house and lot, and Powell, acting as agent for Wiles and his associates, consummated sales to the plaintiffs.

It appears from the record that the individual lots were not staked out by the engineers who surveyed the subdivision, but that ordinarily the surveys were made by the purchasers of the lots as they were sold and houses built thereon.

On June 17, 1948, the Eilands entered into an agreement in writing with the defendants, Leon S. Wiles and his associates, for the purchase of lot No. 34, for the sum of $13,000.00, payment in the amount of $1,300 in cash, as earnest money, being made, and $11,700.00 was to be paid upon the execution and delivery of the deed. This con-

tract provided: "Sellers are to complete the following as per schedule A as shown on the reverse side hereof." On the reverse side it is stipulated that "The following items are to be considered a part of the contract and shall be performed by the Sellers at no cost to the purchasers. * * * Item 5. Sellers agree that they will at their expense * * * Grade and slag a driveway along the west side of the lot from the edge of pavement to the rear of dwelling." As can be readily seen the contract provided that Wiles would construct the driveway in addition to doing other things about the house; and because the contract provided solely for the conveyance of lot No. 34 in Parkside Terrace it is contended by counsel for the defendants that it was intended between the parties that the driveway would and could be constructed from the concrete turnaround in front of the house to the rear of lot No. 34 and within the confines thereof; and that when Wiles and his associates put in the driveway they merely laid the slag down beside the terrace, using a part of lot No. 35 in the process thereof.

The deed for this lot, executed on July 1, 1945, conveyed "all that certain lot or parcel of land situate * * * known and designated on a certain revised Map of Parkside Terrace, * * * as LOT THIRTY-FOUR (34)."

Eiland testified that the defendant, Ray D. Powell, pointed out to him and his wife: "This is your property line. It goes from here to that utility pole and I don't believe I will miss it but a few inches from that utility pole as being the outside marker of that side of the property." On the contrary Powell denied pointing out the westerly line of the lot, and stated that he told all purchasers, including the Eilands, that the lines could be definitely located only by survey.

The contract of June 21, 1948, between Wiles and his associates, as the sellers, and the Beattys, as the purchasers, describes the property simply as "Lot #33, Walker Court, Parkside Terrace, Huntington", and contains the same provisions as are found in the Eiland contract to the

effect that the written contract constitutes the entire agreement for the sale and purchase of the property and that nothing "said verbally by either the contracting parties, or their agent or agents has had or will have any force or effect so far as this transaction is concerned, * * * ", as well as the provision contained in the Eiland contract to the effect that the sellers are to complete certain items set forth on the reverse side of the contract as "Schedule #A." On the reverse side of the Beatty contract under the heading "Schedule #A", the following appears: "The following Items are to be considered a part of the contract and shall be performed by the Sellers at no cost to the Purchasers. * * * 7. Grade and slag a driveway along the East property line of subject lot, from edge of pavement to a line even with the rear wall of the dwelling."

On the recorded plat the Beatty lot had a frontage of thirty feet on the Court, and in the deed of August 6, 1948, under which the Beattys accepted their title, as the result of a survey, described the property by metes and bounds, as well as by lot number, which description did not extend beyond the confines of lot No. 33.

At the time of the construction of the slag driveways neither Powell nor his associate, co-adventurer or partner, as the case may be, Claude L. Walker, as this record discloses, knew that the said slag driveways were approximately seven feet on lots Nos. 35 and 32. It was not until the spring of 1949, after the two houses were occupied by the Eilands and the Beattys, when one Smythe contracted to purchase lot No. 32, and one Earl was considering the purchase of lot No. 35, that the parties discovered that the locations of the slag driveways were not within the confines of lot No. 34 and lot No. 33. At that time Smythe had his lot surveyed, which survey disclosed that a good part, to-wit, about seven feet of the driveway which was proposed to serve the Beatty property was, in fact, on lot No. 32. Eiland prior to that time had built a fence on the westerly side of his lot. He had dug some holes for the fence on a certain line, which evidently he deemed to be

the westerly line of his lot. After the survey Eiland found that his driveway was on lot No. 35. He then dug new holes along a line closer to his house, and at or more nearly located along the true line of lot No. 34.

There is a substantial conflict in the evidence in this case as to the happenings leading up to the execution of the contract between Wiles and his associates and the Eilands, as to lot No. 34, and the contract with the Beattys as to lot No. 33, and to a large extent it is on the basis of this conflict in the evidence that the appellees seek to have the decrees of the Circuit Court of Cabell County sustained, and yet there seems to be no conflict in the evidence that Powell informed the defendants that each lot had a frontage of thirty feet on Walker Court. Likewise the evidence clearly shows that both the Eilands and the Beattys knew that the boundary line between their two lots, that is Lots Nos. 33 and 34, was well established as being midway between the two houses on the two lots. In fact, Beatty testified that there was a stake between the house which he was buying and the house which the Eilands were buying in the rear of the two lots, indicating the dividing line. Clearly, from this record this Court must say, after a careful examination thereof, that the plaintiffs knew, or at least should have known, that they had purchased only thirty feet on Walker Court, and evidently from the testimony of the Beattys, as well as the Eilands, the line between the two properties was well established.

If we take the testimony of the plaintiffs as true, there was a clear representation on the part of Powell, Wiles evidently being present at least on one occasion, that the easterly line of lot No. 33 extended seven feet on lot No. 32 and the westerly line of lot No. 34 extended approximately seven feet on lot No. 35. If we take Beatty's testimony as true, Powell designated where the easterly line of lot No. 33 ran, and in the case of the Eilands by standing on the driveway in the direction of the rear of lot No. 34 and by pointing with his arm toward a utility pole, he indicated where the westerly line of the Eiland property

ran. On the other hand, Powell denied that he undertook to point out the exterior property lines purchased by the plaintiffs. He testified that he informed the Eilands and the Beattys that the lots in Parkside Terrace had never been completely staked, and he urged a survey in both instances. Undoubtedly both the Beattys and the Eilands understood that they were to have a frontage of only thirty feet, and no more, on Walker Court.

If we take the testimony of the plaintiffs as true, we should say that they were not shown a plat of Parkside Terrace, indicating lots No. 33 and 34, but that they bought according to the representations and the directions on the ground made by Powell. Powell testified, and the plaintiffs deny it, that the lots were sold according to lot numbers on the plat recorded in the office of the Clerk of the County Court of Cabell County. He also testified that on the mantel in the Beatty house there was a plat showing Parkside Terrace, which plat was shown to the Beattys, and on which the lots on Walker Court were shown to be thirty feet on a curving line. The record discloses that a plat of Parkside Terrace Addition to the City of Huntington at the time the negotiations were being had between the parties, as well as at the time the sales were finally consummated by the deeds, was of record in the office of the Clerk of the County Court of Cabell County. Only a casual examination of the record title to the property would indicate to any competent lawyer that lots Nos. 33 and 34 had, in fact, a frontage of only thirty feet and not thirty-seven feet, as contended by the plaintiffs.

The agreements between Wiles and his associates and the Eilands and Beattys provide, respectively, for the purchase of lots Nos. 33 and 34 in Parkside Terrace. Both agreements, as heretofore stated, contain a provision that the contracts constitute the entire agreements for the purchase and sale of the lots. The plaintiffs admitted that they thought they were buying lots having only a thirty-foot frontage. Whether, as the plaintiffs testified and Powell denied, the latter made certain misrepresentations to them, the fact remains that the Beattys bought lot No.

33, and agreed to pay the sum of $13,000.00 for it; and that the Eilands bought lot No. 34 and agreed to pay $13,000.00 therefor. The latter required no survey and none was made: the former had a survey made and the description in the deed by metes and bounds would inform them that they were purchasing a lot having only a frontage of thirty feet. Both the Eilands and the Beattys obtained deeds for their respective lots, which deeds were in strict conformity with the written contracts of sale, and which contracts are unambiguous in their terms.

As the description of lot No. 34, contained in the Eiland deed, is in conformity with the description contained in the written contract, the Eilands, in our opinion, would not be entitled to a thirty-seven-foot frontage on Walker Court, instead of thirty feet, as shown by the deed, the unambiguous contract of sale, and the recorded plat. By the same token we appraise the Beatty contract and deed in the same way.

A court of equity, in the absence of fraud, should not decree the reformation of deeds where, as here, the deeds are in strict conformity with the written contract, which evidence by their unambiguous terms that the minds of the parties have met. *Daniel* v. *Yearick,* 187 Va. 396, 46 S. E. 2d 333; *Koen* v. *Kerns,* 47 W. Va. 575, pt. 2 syl., 35 S. E. 902. See generally 45 Am. Jur., Reformation of Instruments, Section 7.

The Eilands and the Beattys, respectively, having purchased lots Nos. 34 and 33 with full knowedge, as this record shows, that said lots each had a frontage of thirty feet on Walker Court, and having obtained deeds for said lots, which are strictly in conformity with the contracts of sale, they are, in our opinion, not entitled to have their deeds reformed so as to give them a frontage of thirty-seven feet on said Court, instead of thirty feet, as shown by the recorded plat to which reference is made in both deeds; and, in the case of the Beattys, as shown by the description by metes and bounds contained in their deed. Surely, a court of equity should not reform a contract for

the sale of land, which is clear and unambiguous in its terms, nor enlarge the provisions of a deed made in conformity with the contract, which would give to the grantees in the deed more land than they contracted for. Under the cloak of reformation of a contract or deed, a court of equity cannot convey property which the parties of themselves did not, in fact, purchase, or intend to purchase.

There being no equity in plaintiffs' bills of complaint under the evidence adduced in support thereof, the Circuit Court of Cabell County, acting as a court of equity cannot award decretal judgments for monetary damages in plaintiffs' favor. *The Carlsbad Manufacturing Co. v. Kelley*, 84 W. Va. 190, pt. 4 syl., 100 S. E. 65: "Generally where a court of equity has once obtained jurisdiction of a cause, it will retain it for all purposes and administer complete relief. But in order to authorize relief obtainable in an action at law, some substantial ground must exist to confer equitable jurisdiction, and if the pleadings or proof fail to establish a basis for such relief, a court of equity is without jurisdiction to award other relief by way of recovery upon a purely legal demand, unless it appears that the remedy at law is inadequate." See also *Laidley* v. *Laidley,* 25 W. Va. 525, pt. 1 syl., and *Teter, Admr.* v. *Teter,* 65 W. Va. 167, pt. 3 syl., 63 S. E. 967.

The decrees of the circuit court are, therefore, reversed, and the bills of compaint dismissed.

*Decrees reversed;*
*bills of complaint dismissed.*