674 S.E.2d 190

**TERRA FIRMA COMPANY, a West Virginia company and wholly-owned subsidiary of Consol Energy, Inc., a Delaware corporation, Petitioner Below, Appellee**

v.

**Robert MORGAN and Vickie Morgan, husband and wife, Respondents Below, Appellants.**

No. 33908.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 8, 2008.

Decided: Dec. 12, 2008.

330

Kimberly S. Croyle, Esq., Bowles Rice
McDavid Graff & Love, Morgantown, for Appellee.

Martin J. Wright, Jr., Esq., Bailey, Riley,
Buch & Harman, Wheeling, for Appellants.

PER CURIAM:[1]

In this appeal from the Circuit Court of Monongalia County, we are asked to review an order granting summary judgment in an action seeking to reform a deed and seeking monetary damages.

As set forth below, we affirm the circuit court's summary judgment order.

## I.

On August 29, 2003, appellee Terra Firma Company was incorporated by coal company Consol Energy, Inc. Terra Firma was created to acquire "in the most expeditious and economical fashion" approximately 3,050 acres of contiguous property in western Monongalia County, West Virginia, for a planned coal preparation facility. Terra Firma's president was James A. Russell, a lawyer employed by the law firm of Steptoe & Johnson.

Terra Firma hired William Burton as its real estate agent to negotiate the purchase of various tracts of land for Terra Firma. Mr. Burton received from Mr. Russell instructions to proceed with the acquisition of certain properties, and the monetary limits upon the purchase price for those properties.

Appellants Robert and Vickie Morgan owned 173 acres of farm land in Monongalia County, within the area that Consol Energy desired to build its coal preparation plant. The parties do not dispute that the Morgans were unaware of Consol Energy's plans.

In September 2004, the appellants hired a real estate agent, Nancy Kincaid, to sell their farm land. The appellants listed the property for sale for $640,000.00, and soon thereafter, Mr. Burton made an offer on behalf of Terra Firma to purchase the land. However, all of the negotiations regarding the purchase were conducted between Mr. Burton

and Ms. Kincaid; the appellants never met or spoke with Mr. Burton until long after they signed an agreement to sell the land.

With each offer that he made to the appellants, Mr. Burton included a signed "Notice of Agency Relationship" on a form prepared by the West Virginia Real Estate Commission. The form was signed by Mr. Russell—identified on the form as "Buyer"—and signed by Mr. Burton, and stated that Mr. Burton was acting "as agent of ... The Buyer, as the buyer's agent." The form says this about an agent's duties:

> Regardless of whom they represent, the agent has the following duties to <u>both</u> the buyer and the seller in any transaction:
> . . .
> • Must disclose all facts known to the agent materially affecting the value or desirability of the property....

The agent is not obligated to reveal to either party any confidential information obtained from the other party which does not involve the affirmative duties set forth above.

During the course of the negotiations between Mr. Burton and the appellants' real estate broker over the sale of the property, the record indicates that only three terms were the subject of debate. First, the parties negotiated over the price of the land. Mr. Burton initially offered the appellants $480,000.00, and after several rejections and counter-offers the appellants agreed to sell the land for $525,000.00. Second, the appellants asked that the sale agreement include a right for the appellants to lease the land following the closing; Mr. Burton, on behalf of appellee Terra Firma, agreed to this term.[2] And finally, the appellants tried to secure rights to hunt on the land, a term which the appellee rejected.

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008 and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. The November 3, 2004 Agreement says that the Morgans could "remain in possession of the property after closing until May 31, 2005." Subsequently, on December 15, 2004, the parties entered into a lease allowing the Morgans to lease the property for $400.00 a month for a term from June 1, 2005 until December 31, 2005, and from month to month thereafter, to "use and occupy the Premises solely for their principal residence[.]"

The appellants finally signed a Real Estate Purchase Agreement on November 3, 2004. The Agreement contained all of the negotiated and agreed upon terms between the appellants and the appellee, including the right of the appellants to continue leasing the land. Before signing the Agreement, the appellants had it reviewed by an attorney. Later, the appellants had another attorney review all of the closing documents, including the deed from the appellants to the appellee.

The appellants contend that, during the sale negotiations, they were suspicious that Terra Firma might have been a coal company or landfill company. The appellants called their agent, Ms. Kincaid, on the phone and asked about the identity of Terra Firma and why it wanted the property. Ms. Kincaid informed the appellants—based upon her own speculation—that Terra Firma was a company of investors who were purchasing the property for land development. The appellants contend that, without further inquiry, they thereafter presumed that Terra Firma intended to develop the land for residential housing.

On December 14, 2004, the appellants attended a closing to complete the sale of the property at the offices of Steptoe & Johnson in Morgantown, West Virginia. Both Mr. Burton and Mr. Russell were at the closing, and met the appellants for the first time. Appellant Mr. Morgan contends that, before he signed the deed conveying the property, he said to Mr. Burton, "I want to know if this is a landfill or coal company buying it." Mr. Burton's answer was, allegedly, "rest assured, it is for land development purposes only."

In March 2005, the appellants claim that they learned from a neighbor that they had sold their land to "Consolidated Coal." Approximately eighteen months later, during the summer of 2006, Mr. Morgan contacted a representative for Consol Energy and explained that he was concerned about the way that the sale of the land had occurred. Mr. Morgan stated that he would "like to have what [the land] is worth" and also asked if the appellants could keep the house on the land. The representative stated that he would follow-up on his discussions with Mr. Morgan.

Thereafter, however, the appellants stopped making rental payments to the appellee as required under the terms of their lease.

On November 28, 2005, counsel for appellee Terra Firma provided the appellants with a letter formally terminating the lease. Then, on January 6, 2006, the appellee filed the instant case against the appellants in the circuit court, alleging that the appellants were wrongfully occupying the subject land, and seeking back rent as damages.

The appellants immediately counterclaimed, and asked that the circuit court reform the appellants' Real Estate Purchase Agreement with the appellee. Specifically, the appellants sought to reform and increase the purchase price of the land based on the alleged inequitable conduct of appellee Terra Firma, and on Mr. Burton's alleged breach of his duty as an agent to disclose "all facts known to [Mr. Burton] materially affecting the value or desirability of the property." The appellants essentially argued that, had they known that a coal company was purchasing their land, they would have sold the land for a higher price.

On January 18, 2006, the circuit court ordered the appellants to vacate the land and to pay appellee Terra Firma back rent from August 2005 through January 2006. However, the circuit court permitted the appellants' counterclaim to proceed forward with discovery.

After substantial discovery, the appellee filed a motion for summary judgment. In an order dated June 15, 2007, the circuit court granted summary judgment to the appellee. The circuit court found that the "important things" negotiated in reaching the agreement to sell the property

> were the price, a leaseback provision, and hunting rights; neither Terra Firma's corporate structure, nor Terra Firma's intended use of the property were ever addressed by the negotiations.

The circuit court found that there was no indication in the record that Terra Firma's corporate structure as a coal company sub-

sidiary, and no indication that Terra Firma's intended use of the property, were "material" to the negotiations that culminated with the execution of the Real Estate Purchase Agreement. In sum, the circuit court determined that the appellants could not, subsequent to the signing and execution of the real estate contract, claim that any misrepresentations about the appellee's identity and intended use of the land were material to the appellants' decision to sell the land. The circuit court concluded that "seller's remorse based on the discovery that one's neighbors may have negotiated better terms in similar transactions does not constitute 'damage"' that could form the basis for relief.

The appellants now appeal the circuit court's June 15, 2007 summary judgment order, and the circuit court's August 31, 2007 order denying the appellants' motion to alter, amend or set aside the summary judgment order.

### II.

■ Our review of a circuit court's decision to grant a party a summary judgment under Rule 56 of the *Rules of Civil Procedure* is reviewed *de novo.* Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). As we have often stated, "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence,' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Painter v. Peavy,* 192 W.Va. at 192–93, 451 S.E.2d at 758–59.

### III.

The appellants argue that the circuit court erred in granting summary judgment because there are genuine issues of fact that were overlooked by the circuit court. The appellants assert that inferences may be drawn from the record such that a jury could

conclude that the appellee orchestrated a scheme to hide all references to its true identity. Because of this scheme, the appellants argue they are entitled to have the Real Estate Purchase Contract sale price, or the later deed to the property, reformed to reflect that the property was sold to a coal company.

■ It is the general rule that a court should not "reform a contract for the sale of land, which is clear and unambiguous in its terms, nor enlarge the provisions of a deed made in conformity with the contract, which would give to the grantees in the deed more land than they contracted for." *Eiland v. Powell,* 136 W.Va. 25, 34–35, 65 S.E.2d 737, 742 (1951).

■ However, it is an established exception to the general rule that a court may reform a deed to property when either of two conditions occur: there has been a mutual mistake by the parties, or there has been a mistake by one party and fraud or other inequitable conduct by the other. As we stated in Syllabus Point 2 of *Nutter v. Brown,* 51 W.Va. 598, 42 S.E. 661 (1902):

> The jurisdiction of equity to reform written instruments, where there is a mutual mistake, or mistake on one side and fraud or inequitable conduct on the other, if the evidence be sufficiently cogent to thoroughly satisfy the mind of the court, is fully established and undoubted.

The standard of proof necessary to warrant reforming a written instrument is "strong, clear and convincing." *Lusher v. Sparks,* 146 W.Va. 795, 806, 122 S.E.2d 609, 615 (1961). *See also,* Syllabus Point 1, *Donato v. Kimmins,* 104 W.Va. 200, 139 S.E. 714 (1927) (reformation of a deed requires "clear, convincing, and unequivocal evidence"). A high standard of proof is, obviously, necessary to provide finality to property transactions. As we stated in *Donato v. Kimmins,* 104 W.Va. at 204–05, 139 S.E. at 715–16:

> A deed is an instrument executed with formality and imports full and complete exposure of the intent of the parties. It speaks the final agreement by the clearest and most satisfactory evidence. In some instances the courts have gone so far as to

hold that it would be an extreme case where it would reform a written instrument upon the uncorroborated testimony of a party thereto, even if such testimony is not contradicted. The books are full of cases which reveal the high degree of caution which courts exercise in such matters. The relief will be denied whenever the evidence is loose, equivocal, or contradictory, or is open to doubt or opposing presumptions.

The appellants concede that there was no "mutual mistake" by the parties. Instead, the parties agree that the appellants bore the burden of establishing (1) their own mistake, as well as (2) some fraud or other inequitable conduct by appellee Terra Firma.

As to the first element, to meet the legal definition of "mistake," the appellants' mistake or ignorance of facts regarding appellee Terra Firma's corporate structure or intended use of the property must have been material, and such that the appellants could not have discovered the facts through reasonable diligence. *See Simmons v. Looney*, 41 W.Va. 738, 742–43, 24 S.E. 677, 678 (1896) ("It must be such as the party could not by reasonable diligence get knowledge of when he was put upon inquiry; for if, by such reasonable diligence, he could have obtained knowledge of the fact, equity even will not relieve him, since that would be to encourage culpable negligence."); *Eye v. Nichols*, 137 W.Va. 75, 84, 70 S.E.2d 264, 268 (1952) ("the cases are practically unanimous in holding that mistake which results from failure to exercise that degree of care and diligence which would be exercised by persons of reasonable prudence under the same circumstances will not be relieved against[.]").

As to the second element, to establish that a party to a real estate transaction has engaged in fraud, we set forth the following standard in Syllabus Point 1 of *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981):

The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was dam-

aged because he relied on it." *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927).

*In accord*, Syllabus Point 5, *Kidd v. Mull*, 215 W.Va. 151, 595 S.E.2d 308 (2004).

Accordingly, in the instant action the burden was upon the appellants to show (1) that the appellants made a mistake about the identity of the appellee or the appellee's intended use of the land; (2) that a misrepresentation was committed by Terra Firma, or induced by it, about the identity of the appellee or the appellee's intended use of the land; (3) that the misrepresentation was material and false; (4) that the appellants relied upon the misrepresentation and were justified under the circumstances in doing so; and (5) that the appellants were damaged because of their reliance.

The appellants assert that the record is clear that the appellants were wholly unaware of the appellee's true identity as a coal company and the appellee's intended use of the land. Further, the appellants assert that the record contains several instances where it is clear, or may be inferred, that the appellee concealed its identity and purpose for buying the land. The appellants argue that the concealment was material to the sale, because had the appellants known of the appellee's true identity as a coal company, they would have sold the property for a higher price. The appellants therefore contend that the circuit court erred in granting summary judgment.

After carefully reviewing the record and the circuit court's lengthy summary judgment order, we find no error.

To begin, we find nothing in the record to establish that the appellants' mistaken assumption concerning the identity of the appellee or the purpose behind the appellee's purchase was material at the time the Real Estate Purchase Agreement was formed, nor do we find evidence of record to establish that the mistake could not have been discovered or rectified through reasonable diligence. *Simmons*, 41 W.Va. at 742–43, 24 S.E. at 678. The appellants never articulated to Mr. Burton, either individually

or through their agent Ms. Kincaid, that appellee Terra Firma's corporate identity, or its intended use of the land, were important concerns until *after* the parties had executed the purchase agreement. Further, the appellants conducted no investigation and made no inquiries prior to entering into the contract. Prior to signing the contract, the appellants voiced their suspicions to their own realtor, Ms. Kincaid, that Terra Firma might have been a coal company; however, the appellants also knew that Ms. Kincaid's statement regarding the intentions of Terra Firma was simply a product of her own speculation. Accordingly, we can find no material question of fact concerning whether the appellants' ignorance of appellee Terra Firma's corporate structure or intended use of the property were material to the formation of the real estate contract. We also can find no material question of fact indicating that the appellants could not have discovered the facts through reasonable diligence.

Furthermore, we find insufficient evidence to establish a material question of fact regarding whether the appellee engaged in fraud, misrepresentation or inequitable conduct. The burden was upon the appellants to produce sufficient evidence that a jury might make a finding by strong, clear and convincing evidence that the act claimed to be fraudulent was the act of the defendant or induced by it; that it was material and false; and that plaintiff relied on it and was justified under the circumstances in relying upon it. Syllabus Point 1, *Lengyel v. Lint, supra.* The record indicates that the appellants signed an agreement to sell their land to Terra Firma long before they ever met or spoke with Mr. Burton at the closing. Furthermore, the appellants admitted that they agreed to the purchase price of $525,000.00 based upon Ms. Kincaid's information that no other property in the vicinity had received this kind of offer, and not upon any inducement by the appellee.

Additionally, the appellants failed to introduce any evidence establishing that the iden-tity of the buyer or the intended use of the land materially affected their decision to agree to sell the land to the appellee. The appellants never notified the appellee that these issues were material to the sale *before* the Real Estate Purchase Agreement was executed; instead, the appellants made their concerns evident some eighteen months *after* the transaction was complete.

And lastly, we find nothing to suggest that the appellants relied on any misrepresentations made by appellee Terra Firma. The record is clear that, prior to the execution of the Real Estate Purchase Agreement, the appellants had no contact with any representatives for the appellee.

Taken together, it is clear that the appellants failed to produce evidence sufficient for a reasonable jury to find in their favor on the essential elements in an action for fraud under Syllabus Point 1 of *Lengyel v. Lint, supra.*[3]

The appellants make one additional argument in challenging the circuit court's summary judgment order. The appellants argue that Mr. Burton, as an agent for the appellee, failed to disclose "facts known to the agent materially affecting the value or desirability of the property" as required under the "Notice of Agency Relationship" forms that he provided to the appellants (through their agent Ms. Kincaid).

The West Virginia Real Estate License Act requires every licensed real estate broker to disclose who they are representing in every transaction, using a form prescribed by the West Virginia Real Estate Commission. *W.Va.Code,* 30–40–26(d) [2002] states:

> Every broker, associate broker and salesperson owes certain inherent duties to the consumer which are required by virtue of the commission granting a license under this article. The duties include, but are not limited to: . . .
>
> (d) Every licensee shall disclose in writing, on the notice of agency relationship

---

**3.** Syllabus Point 1 of *Lengyel v. Lint* creates one additional element of proof: that the appellants were damaged because they relied on the misrepresentations of the appellees. The appellees argue that the appellants suffered no damage because they purchased the land in 1996 for $185,000.00, and sold it in 2004 for $525,000.00. The appellants counter that they *did* suffer damages, because had they known they were selling their land to a coal company, they would have sold for a much higher price. In light of the fact that the appellants have failed to establish any of the other elements of proof required by *Lengyel v. Lint,* we decline to assess this last factor.

form promulgated by the commission, whether the licensee represents the seller, the buyer or both. The disclosure shall be made prior to any person signing any contract for representation by a licensee or a contract for the sale or purchase of real estate.

As stated previously, the "Notice of Agency Relationship" provided by Mr. Burton to the appellants clearly states that he was representing the buyer.

However, the Notice also contains the following statement regarding Mr. Burton's duties toward the appellants:

> Regardless of whom they represent, the agent has the following duties to <u>both</u> the buyer and the seller in any transaction:
> . . .
> • Must disclose all facts known to the agent materially affecting the value or desirability of the property. . . .
> The agent is not obligated to reveal to either party any confidential information obtained from the other party which does not involve the affirmative duties set forth above.

The appellants argue that Mr. Burton failed to disclose that he was purchasing the property for a coal company, for use as a coal preparation plant, and that those facts would have affected the value of the property.

The Notice, however, only requires disclosure of facts *"materially* affecting the value or desirability of the property." As has already been discussed, the appellants never notified Mr. Burton that the identity of his client, nor his client's intended use of the land, was material to their decision to sell the land. Accordingly, we cannot say on this record that any duty was accepted by Mr.

Burton that was subsequently, and actionably, breached to the detriment of the appellants.[4]

Accordingly, we find no error in the circuit court's decision to grant summary judgment to the appellee, nor in the circuit court's later decision to refuse to alter, amend or set aside that judgment.

## IV.

The circuit court's June 15, 2007 summary judgment order is affirmed.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH, sitting by temporary assignment.

---

4. The appellees assert that if this Court were to interpret the Notice of Agency Relationship as creating a dual agency relationship—one whereby every licensed broker would have duties toward both the seller and buyer—then conflicts of interest would be created in every real estate transaction because every licensed broker would have essentially promised a duty of confidentiality, loyalty, and full disclosure to both parties simultaneously. The appellee argues that such an interpretation would cripple a broker's ability to bargain on behalf of either sellers or buyers.

We do not consider this argument by the appellee, because we are able to resolve this case on more limited grounds. We note, however, that on the one hand, every licensed real estate agent who signs a Notice of Agency Relationship (as required by law) is explicitly adopting a duty of disclosure toward both the buyer and seller. On the other hand, agency regulations and forms must conform to the Legislature's intent, and we can find nothing in the *West Virginia Code* creating a duty to "disclose all facts known to the agent materially affecting the value or desirability of the property." *See* Syllabus Point 4, *Maikotter v. University of W.Va. Bd. of Trustees,* 206 W.Va. 691, 527 S.E.2d 802 (1999); Syllabus Point 3, *Rowe v. W.Va. Dept. of Corrections,* 170 W.Va. 230, 292 S.E.2d 650 (1982).