# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**James E. Woodyard,**
**Plaintiff Below, Petitioner**

**vs.)  No. 21-0628** (Cabell County 19-C-519)

**Lexa Woodyard and James E.**
**Woodyard, II,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner James E. Woodyard (sometimes "Jim"), by counsel Mark A. Saad and Anna G. Casto, appeals the Circuit Court of Cabell County's July 8, 2021, order denying his motion to amend the judgment after the circuit court granted, in part, Respondent Lexa Woodyard's ("Lexa") partial motion for summary judgment. Lexa, by counsel Amy C. Crossan, filed a response in support of the circuit court's order to which petitioner submitted a reply. Respondent James E. Woodyard, II ("Jamie"), by counsel Maggie Kuhl, also filed a response, but that response was in support of petitioner's petition before this Court. Petitioner's appeal stems the fact that he included Jamie's name along with his own on the deeds to certain real property, and, on one occasion, property relevant to this appeal was deeded solely to Jamie and Lexa. When Jamie and Lexa subsequently became involved in divorce proceedings, petitioner sought to have himself declared the sole legal owner of the properties.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondents (Jamie and Lexa) were married, and petitioner is Jamie's father. Petitioner purchased several business properties; both petitioner's and Jamie's names were placed on the deeds for those jointly held business properties. There appear to also be deeds to other properties that include both Jamie's and Lexa's names, only one of which is at issue in this appeal. Lexa later filed for a divorce from Jamie, and she identified her interest in the jointly held properties as part

1

of the family court proceedings.[1] Petitioner filed a declaratory judgment action against respondents seeking, in relevant part, to have the court declare petitioner the owner of certain pieces of real property in order to have them excluded from respondents' marital estate. According to the circuit court, petitioner did not want Lexa to take any part of the properties so he declared that he had those properties deeded in Jamie's or Jamie's and Lexa's names "for estate planning purposes" only and that he never had any donative intent.[2] The properties and deeds at issue in the declaratory judgment action are the following: a) 501 Mason Street; b) 718 Mason Street; c) Rock Camp property; d) Georgia Avenue property; and e) Rivers Edge property.[3]

Petitioner filed a motion for partial summary judgment as to Counts 1 and 3 (both counts seek declaratory judgment that petitioner is the sole owner of certain real property), in addition to other counts not relevant to this appeal, and Lexa filed a cross-motion for partial summary judgment as to Counts 1 and 3.

Some of the evidence relevant to the circuit court's denial of petitioner's motion for partial summary judgment and granting of Lexa's motion for partial summary judgment included that, during discovery, it was revealed that although petitioner employed Ralph Bassett as his attorney for approximately fifteen years, he did not have conversations with Mr. Bassett about the decision to put Jamie on the deeds. The circuit court found that the deeds do not indicate that the property is a gift from petitioner to Jamie and noted that petitioner was not claiming that Mr. Bassett made a mistake when preparing the deeds.

During discovery, attorney Ron Flora, who also represented petitioner at certain points relevant to this action, testified in his deposition that petitioner wanted Jamie's name on the deeds because he was concerned about his estate after petitioner's wife died, particularly due to petitioner's declining health.[4] Mr. Flora further testified that petitioner wanted to make sure that

---

[1] According to Jamie, he and Lexa were divorced by final order entered on July 8, 2020.

[2] Jim also claimed that he was owed money for several loans and that he was the owner of certain personal property that has been kept by Jamie and Lexa over the years.

[3] In general, the parties' references to the record are woefully deficient in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, and the appendix record does not have a table of contents, as required by Rule 7(c) of the West Virginia Rules of Appellate Procedure. The parties do not specifically identify all of the deeds in their briefs. The deeds this Court located in over 950 pages of the record all listed Jim and Jamie, with the exception of the Georgia Avenue property and a property that is not relevant to this action, which are co-titled between Jamie and Lexa.

[4] Lexa points out that petitioner testified that he had memory issues and that if he read a piece of paper he could not recall the details of it ten minutes later. When asked more about his memory issues, he said it was "doubtful [he] could remember everything that happened three years ago, I couldn't" and that it was "very doubtful that [he] could remember" things that happened five

(Continued . . .)

if he was hospitalized, Jamie's name on the deed would allow Jamie to have control over the properties. When petitioner asked Mr. Flora whether Jamie would get the property if something happened to petitioner, Mr. Flora responded in the affirmative.

Additionally, the evidence presented during discovery revealed that there is a City National Bank account that is specifically for rental properties, which identifies Jim and Jamie as the owners, using Jamie's date of birth and telephone number as the owner. Petitioner testified that he allows Jamie to keep the rental income from the Mason Street and Rivers Edge properties. The circuit court found that petitioner's tax returns substantiate that he did not claim the rental income on the Rivers Edge property or the Georgia Avenue property. Petitioner claimed the rent on the Mason Street property even though Jamie kept the rental income with petitioner's agreement. Jim and Jamie both had lines of credit, though Jim "borrowed" about $60,000 from Jamie's line of credit to buy property pursuant to a "word of mouth" agreement. When one house was sold, Jamie's line of credit was paid off.

Further, during Lexa's deposition, she testified that when Jamie's employment with Lowe's was terminated, he became self-employed in the rental business with his father, though he began working for the rental business a few years earlier. Jamie performed maintenance on the rental properties and worked from a home office performing bookkeeping and making calls related to that business. Jamie drafted lease agreements for rental property that identified Jamie as the landlord, and rent checks paid to Jamie would come to their home.

The circuit court held a hearing on those motions on April 13, 2021, and the circuit court, thereafter, entered its May 5, 2021, order denying petitioner's motion for partial summary judgment and granting Lexa's cross-motion for partial summary judgment as to Counts 1 and 3. According to that order, petitioner acknowledged that some deeds were jointly titled with Jamie and others with Jamie and Lexa. Petitioner also acknowledged that his own name was not on the Georgia Avenue property and that there was no deed of trust on that property. With regard to Counts 1 and 3, petitioner argued that a deed must be delivered and accepted by a grantee for an effective conveyance but that he did not deliver or intend to deliver the deeds to respondents. He further asserted that respondents did not accept delivery of the deeds as compensation or gifts. Therefore, they could not be marital property in the divorce. Petitioner asked that the deeds be rescinded or, alternatively, held in a constructive trust. Lexa also sought summary judgment as to Counts 1 and 3, arguing that the facts clearly show that there was donative intent and acceptance so the property must be considered marital property eligible for equitable division by the family court. The circuit court granted Lexa's cross-motion for summary judgment as to Counts 1 and 3, finding that the properties at issue were deeded by petitioner to Jamie with donative intent, the properties were accepted, and they were marital property for purposes of proper division by the family court. Further, with regard to Count 3, the court found that Lexa was entitled to summary judgment because the law requires that she be awarded her marital interest in property acquired during the marriage. Because the real property was jointly held by petitioner and Jamie, as they were in a joint venture and petitioner was compensating Jamie for personal and business assistance

years prior. During petitioner's deposition, he had no recollection of a meeting that occurred approximately one year prior.

rendered to petitioner;[5] Lexa and Jamie paid the income taxes on one of the properties; Jamie and Lexa kept the rent on another piece of property; their line of credit was used to further the joint venture; and Jamie worked full time to further the family rental business during his marriage to Lexa, the court found in favor of Lexa as to that count.[6]

Following the entry of the order granting, in part, and denying, in part, Lexa's motion for summary judgment and denying petitioner's motion for summary judgment, petitioner filed a motion to alter or amend the judgment, pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure, and a motion to stay proceedings pending Rule 59 motion. Thereafter, the circuit court entered its July 8, 2021, order denying petitioner's motions. In doing so, the circuit court found that petitioner's only "scintilla of evidence" that he did not intend to deed the property to Jamie as part of his compensation in their business venture was his post hoc statement that he did not intend to give the property to Jamie and/or Lexa but that he included Jamie's name on the deeds solely for estate planning purposes. The court went on to find that that claim was rebutted by the undisputed evidence in the case. The court further found that the option of a transfer on death deed arose in 2014, but petitioner rejected that suggestion. According to the circuit court,

> [h]ad [petitioner's] intentions truly been to transfer the property after his death, either the transfer on death deed or a will or a power of attorney would have accomplished his goals. [petitioner] consulted with attorneys every step of the way as he made decisions regarding his business. [Petitioner] rejected the other estate planning options presented and was clear that he wanted Jamie to have an ownership interest so he would have control over the property.[] In this case, the record taken as a whole could not lead a rational trier of fact to find for [petitioner] on these issues. . . . The [c]ourt did not weigh [petitioner's] statement, but rather it relied upon the unambiguous language of the deeds and documented actions of the parties.

In its order, the circuit court went on to note that to the extent it used the term "donative intent" in the summary judgment order,

> it was error. The term was not intended to mean that [petitioner] was making a gift. The term was intended to convey the affirmative decision made by [petitioner] to make the transfers of property. The record demonstrates that [petitioner's] intent was not to make a gift or to unjustly enrich Jamie and Lexa, but rather it was payment to Jamie for services rendered during his marriage to Lexa.

Based on these findings, the circuit court denied petitioner's Rule 59(e) motion and found his request for a stay moot. Petitioner appeals from that July 8, 2021, order denying his Rule 59

---

[5] Without citing to the record, Jamie asserts that he and Jim both testified that Jim offered Jamie the income in exchange for managing certain properties.

[6] The circuit court also set forth details and reached conclusions regarding various personal property, loans, and an alleged breach of contract between the parties. As petitioner does not appeal those decisions, they are not relevant here.

4

motion.

We have held that the standard of review for the denial of a motion to alter or amend judgment filed pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure "is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, in part, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998). "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

On appeal, petitioner sets forth four assignments of error. However, due to the significant overlap between the first three assignments of error, they will be addressed together. First, petitioner asserts that the circuit court erred by granting Lexa's motion for summary judgment declaring respondents' ownership of undivided interests in petitioner's business properties despite Jim and Jamie acknowledging the absence of Jim's donative intent. Second, petitioner contends that in the absence of his donative intent, the circuit court erred in granting Lexa summary judgment declaring respondents' ownership of undivided interests in petitioner's business properties because the record below reveals a hotly disputed genuine issue of material fact whether Jamie provided services to his father in exchange for petitioner conveying undivided interests in his business properties. Third, petitioner asserts that, given a genuine issue of material fact, the circuit court erred in declaring that petitioner's business properties were converted into respondents' marital estate subject to division in respondents' divorce proceeding where petitioner disputes respondents' equity interests in them.

In support of these assertions, petitioner argues that the record shows that all parties agree that petitioner had no donative intent when he decided to co-title his business properties in either Jamie's or Jamie's and Lexa's names. In addition, the record contains no evidence of petitioner's donative intent whatsoever, as no party testified or produced evidence, other than the deeds themselves, to support the contention that Jim intended to give interest in his business properties to respondents or their marital estate. He further contends that the circuit court erred by finding there is no genuine issue that Jim co-titled his business properties not for his own personal purposes but, rather, as consideration for Jamie's services to his proprietorship. Petitioner asserts that the circuit court's incorrect finding was based on the circuit court's "own surmisal or weighing of the credibility of the parties. The lower court has invaded the province of the jury on this crucial point of fact. There is a genuine dispute of material fact that the conveyances were made for consideration for Jamie's services." Without citing to the record, petitioner asserts that he supplied all of the purchase money for his business properties, incurred all of the debts in his name alone, and paid all of the operating costs and taxes "with very small contributions from Jamie."

Petitioner further argues that the circuit court declined to alter or amend summary judgment for Lexa "despite jettisoning its central finding of fact" that petitioner had donative intent. The circuit court affirmed summary judgment for Lexa and, in effect, Jamie while incongruently acknowledging that there were no business agreements between Jim and Jamie. Petitioner contends that the most likely explanation for the circuit court's decision is simply that it did not believe Jim and Jamie even when Jamie and Lexa failed to produce any evidence that they claimed half of petitioner's estate as income. Therefore, the circuit court improperly invaded the jury's province. In addition, petitioner contends there is no dispute that for a few years he gave the rent from some

5

of his properties to Jamie for services "but not the interests in the capital assets themselves."

Petitioner also asserts, without citing to the record, that he had no intention or desire to convey any part of his interests to Jamie or Lexa or their marital estate—as a gift or otherwise. Petitioner claims that he conveyed the properties "as accommodations for himself, to give his son a degree of control over his business properties if he was unable to manage them himself." Effective delivery of a deed must include transfer of possession of a valid deed satisfying all required formalities and intent of the grantor to divest himself of title. *Walls v. Click*, 209 W. Va. 627, 634, 550 S.E.2d 605, 612 (2001). According to petitioner, it is undisputed that the record contains no evidence of physical delivery of deeds to respondents and nothing in the record suggests that petitioner sought to have deeds delivered to Jamie or Lexa. Instead, pointing to but failing to cite to the record, petitioner asserts that the record clearly shows that he intended to hold these deeds as a device purely used for estate planning after his death or after loss of capacity. Petitioner further contends, without citing to the record, it is undisputed that neither respondent took possession of the deeds at any time. Further, he argues that nothing in the record suggests that either Jamie or Lexa was present when the deeds were executed. He argues that because physical delivery cannot be established, this case turns on petitioner's intent. Finally, with regard to these assignments of error, petitioner contends that the existence of a general partnership is a jury issue and, citing a nearly 100-year-old case, that Lexa has the burden to prove the existence of such a partnership. *See Roberts v. Toney*, 100 W. Va. 688, 692, 131 S.E. 552, 553 (1926).

At the outset, we find that petitioner's "donative intent" argument is a red herring. Although the circuit court originally made that determination, the order on appeal is the circuit court's order denying petitioner's Rule 59(e) motion, in which the circuit court disavowed its prior use of the term "donative intent." In that order, the court went on to find that petitioner did not gift the properties to Jamie. Therefore, we need not address that contention.

While petitioner did not and does not explicitly request that the deeds be reformed, it is apparent that is essentially what he requests. This Court has found that "a court may reform a deed to property when either of two conditions occur: there has been a mutual mistake by the parties, or there has been a mistake by one party and fraud or other inequitable conduct by the other." *Terra Firma Co. v. Morgan*, 223 W. Va. 329, 333, 674 S.E.2d 190, 194 (2008). In addition, as this Court has held, "[i]t is a well-established rule in this jurisdiction that to warrant reformation of a deed for mistake[,] the mistake must be mutual." *Reed v. Toothman,* 176 W. Va. 241, 242, 342 S.E.2d 207, 209 (1986) (citing *Edmiston v. Wilson,* 146 W. Va. 511, 120 S.E.2d 491 (1961) and *Davis v. Lilly,* 96 W. Va. 144, 122 S.E. 444 (1924)). Importantly, at no point has petitioner alleged that he placed Jamie's name on any of the deeds as a mistake or that he did not knowingly choose to put Jamie's name on each deed at issue. He also does not assert that any party to any of the deeds committed fraud. Further, petitioner does not assert inequitable conduct with regard to the formation of the deeds.

In addition, although petitioner argues that his intent is paramount to the resolution of this case, his reliance on his purported intent is misplaced. We have found that "[w]hen a deed expresses the intent of the parties in clear and unambiguous language, a court will apply that language without resort to rules of interpretation or extrinsic evidence." *Gastar Exploration, Inc. v. Rine*, 239 W. Va. 792, 798-99, 806 S.E.2d 448, 454-55 (2017). In that case, we further explained,

6

"when a deed is inconsistent, confusing or ambiguous on its face, a court must look to extrinsic evidence of the parties' intent to construe the deed." *Id.* at 799, 806 S.E.2d at 455. However, petitioner does not argue before this Court that there is any ambiguity or inconsistency in the deeds themselves. Therefore, we need not address his intent outside of the deeds. We also find that the circuit court did not err in considering and applying the unambiguous language of the deeds.

With regard to delivery of the deed, this Court has long held that "'[w]hether there has been a delivery of a deed is a question of fact rather than of law depending upon the intent *of the grantor* to vest an estate in the grantee.' Syl. pt. 2, *Parrish v. Pancake,* 158 W.Va. 842, 215 S.E.2d 659 (1975), *quoting, Garrett v. Goff,* 61 W.Va. 221, 56 S.E. 351 (1907)." Syl. Pt. 3, *Daugherty v. DeWees*, 172 W. Va. 553, 309 S.E.2d 52 (1983) (emphasis added). It is, therefore, the intent of the original grantors who transferred the subject properties to Jim and Jamie, and sometimes to Jamie and Lexa, that controls the question of delivery. In the instant case, no party has alleged that the respective grantors did not intend to vest the ownership of the properties at issue to Jim and Jamie. Therefore, we find no merit to petitioner's contention that the purported lack of delivery to Jamie, without any dispute that delivery to Jim was accomplished, hinders Jamie's and Lexa's legal ownership of the properties under the deeds.

Throughout his argument as to the first three assignments of error, petitioner contends that the circuit court erred by finding that Jim and Jamie had a partnership or joint venture in the real estate. Without citing any legal authority, petitioner asserts that such finding is a necessary predicate to finding that Jamie owned one-half of the partnership or joint venture, which is necessary to find that the same is part of the marital estate. With regard to joint ventures,

> [t]his Court has held that "'[a] joint venture or, as it is sometimes referred to, a joint adventure, is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied.' Syl. pt. 2, *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987)." Syl. Pt. 5, *Armor v. Lantz*, 207 W.Va. 672, 535 S.E.2d 737 (2000).

*Dailey v. Ayers Land Dev., LLC*, 241 W. Va. 404, 411, 825 S.E.2d 351, 358 (2019). Petitioner testified that after he maxed out his line of credit, he borrowed approximately $60,000 from Jamie to purchase property. There was no written agreement regarding a repayment schedule, but petitioner claims that he paid Jamie back, though he could not recall the details of the repayment. A bank account that petitioner testified is associated with the rental properties was opened using Jamie's date of birth and telephone number. According to petitioner's testimony, he "started letting Jamie collect the rent on two or three pieces of property" upon their agreement that Jamie "would pay the tax, insurance, and maintenance and upkeep." Thus, to the extent that the circuit court's conclusion that there was a joint venture is relevant to this matter, we find that the circuit court did not err in considering and applying petitioner's testimony to its determination.

Finally, in his fourth assignment of error, petitioner asserts that the circuit court erred when it failed to make findings of fact and conclusions of law that the equitable distribution procedure for a divorce proceeding that West Virginia Rule of Civil Procedure 52(a) and other legal

7

authorities require. He argues that the circuit court erred by failing to articulate and apply the steps required in the equitable distribution analysis. He, therefore, asserts that the circuit court summarily divested petitioner of one-half of his business properties, allowing Lexa to "clamor to institute partition proceedings that would force the sale of his properties. Since judgment below, Lexa has filed with the lower court to begin partition of the real estate assets."

By statute, marital property is defined, in relevant part, as follows:

All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property does not include separate property as defined in section 1-238 . . . .

W. Va. Code § 48-1-233(1). While petitioner argues that the circuit court erred by failing to engage in the three-step process necessary for equitable distribution, he ignores a key part of this Court's key holding as to that issue:

Equitable distribution under W.Va.Code, 48-2-1, *et seq.,* is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va.Code, 48-2-32.

Syl. Pt. 1, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990). Chapter 48 of the West Virginia Code pertains to domestic relations, and *Whiting* was a divorce case that originated before a family law master prior to the creation of the current family court system. Therefore, we find that petitioner has failed to show error in the circuit court's refusal to engage in equitable distribution, which should be performed in a separate domestic relations case. Thus, for the reasons set forth herein, we affirm the circuit court's denial of petitioner's Rule 59(e) motion.

Affirmed.

**ISSUED:** August 30, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice William R. Wooton
Justice C. Haley Bunn

8

**DISSENTING:**

Armstead, Justice, dissenting:

I dissent to the majority's resolution of this case.  I would have set this case for oral argument to thoroughly address the errors alleged in this appeal.  Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted—not a memorandum decision.  Accordingly, I respectfully dissent.